## Lyon *against* Alvord and another:

### IN ERROR.

Where the declaration, in an action brought before a justice of the peace, contained three distinct counts, the third of which was for 100 dollars, being money laid out and expended, by the plaintiffs, for the defendant; a judgment was rendered for the plaintiffs, and the defendant appealed the cause to the county court; soon after it was entered there, the plaintiffs moved to erase the third count from the declaration, on the ground that it was not within the jurisdiction of the justice, and this appeared on its face; the defendant, at the same time, moved to quash the whole proceedings, on the ground that as this count had been originally contained in the declaration, and appeared with the others in the copies sent up to the county court, the justice must have in fact taken jurisdiction of it and acted upon it; it was held, that this count constituted no part of the declaration, was never legally before the justice, and ought to be disregarded on the trial of the cause.

Where a vessel or its cargo, during impending danger, is in part voluntarily sacrificed, or there is a voluntary expenditure of money or performance of service, for the preservation of the rest, the loss or expense must be borne by all the parties in interest, in proportion to their respective interests.

Therefore, where the vessel of *A*, on her passage from *Albany* in the state of *New-York*, to *Westport* in this state, with a cargo of lumber, a part of which belonged to *B*, was driven, by stress of weather, on a rock in *Long-Island* sound, by which a hole was broken in her side, she filled with water, was in a sinking condition and wholly unable to proceed on her voyage; *A* thereupon procured her to be towed into the harbour of *Southport*, where he procured another vessel to take the cargo from that port to *Black-rock*, where the part belonging to *B* was unladen and delivered to him; the expenses thus incurred, by the procurement of *A*, having been incurred without any request on the part of *B*, and without any promise of reimbursement by him; in an action brought by *A* against *B*, to recover *B*'s just proportion of such expenses, it was held, 1. that the acts done by *A*, from the time the vessel became disabled, until she was brought into the harbour of *Southport*, being found necessary, were proper subjects of a general average, and the plaintiff was entitled to recover accordingly; 2. that if the exception had been properly taken, the defendant would not have been liable for the expense of taking the lumber from *Southport* to *Black-rock*; unless this was part of the process of lightening the vessel or of fitting it for repairs, in order to save it and the cargo, and to complete the voyage; in which case, this expense also would be the subject of a general average; 3. that as the objection of the defendant, on the trial, went to the whole claim of the plaintiff and the whole evidence to support it, without discrimination, and no distinct question as to the last-mentioned expense was made, a judgment covering the entire expense, would not, for that reason, be reversed.

Where the declaration, in an action of *assumpsit* to recover the expenses of transporting and saving from perils of the sea, certain goods, *consigned to the defendant*, alleged no other consideration for the defendant's promise, than the plaintiff's having incurred such expenses; it was held, 1. that the

defendant, as consignee merely, received no benefit, by the transportation of the goods, and consequently, there was a total omission to state any sufficient consideration; 2. that this defect was not cured by verdict.

THE original action was *assumpsit*, brought by *Morris Alvord* and *Ebenezer Mills* against *Alanson Lyon*, before a justice of the peace, who rendered a judgment in favour of the plaintiffs, from which the defendant appealed to the county court.

The declaration consisted of three counts; the first of which it is unnecessary to state. In the second count, it was alleged, that the sloop *Byron*, on the 5th of *October*, 1844, was, and still is, owned by the plaintiffs; that she was then on a voyage from *Albany* in the state of *New-York*, to the harbour of *Westport* in this state, with a cargo of lumber, consigned in part to *Thomas B. Fanton*, and the residue to the defendant; that while the vessel was passing through the *Western* part of *Long-Island* sound, in proceeding to *Westport*, she was struck by a violent squall, and so disabled that she was in a sinking condition; that to save, as far as possible, the vessel and cargo, the plaintiffs took the cargo from the vessel, and placed it on board another vessel, called the *General Mercer*, and proceeded with it to port and delivered it to said consignees; that in so doing, they expended a large sum, viz. 50 dollars, and incurred other necessary expenses, amounting, with the labour of the plaintiffs, to 100 dollars; that the value of the vessel was 400 dollars, and of the freight about 60 dollars; that according to the principles of commercial law, the plaintiffs were in duty bound to incur said expenses, and render said services, for the mutual benefit of all parties in interest; and that all the said parties were legally and justly liable to pay to the plaintiffs a fair and equitable proportion of those expenses, as a general average of the same; that the defendant, in consideration that the plaintiff had so incurred an equitable proportion of such expenses, on the 1st of *November*, 1844, undertook and faithfully promised the plaintiffs to pay to them said equitable proportion, being 35 dollars, when thereto requested.

The third count was general *indebitatus assumpsit* for the sum of 100 dollars, being so much money laid out and ex-

pended, by the plaintiffs, at the request of the defendant, for work and labour performed by them for him.

In the county court, before issue joined in the cause, the plaintiffs objected to the third count, apparently contained in a copy of the proceedings of the justice, as brought up by the defendant on his appeal, on the ground that that count was improperly inserted in the copy, and the county court had no jurisdiction thereof ; and therefore, the plaintiffs prayed, that said third count be erased, and not regarded on the trial· This motion was resisted by the defendant, who alleged, that the third count was contained in and formed a part of the plaintiffs' declaration, when the action was brought and served, and has always been contained in and formed a part of said declaration, and was part of the copy entered in the county court on the appeal. The plaintiffs replied, that said count was altogether without the jurisdiction of the justice, and ought not to have been considered by him ; and that any action taken by him thereon, was wholly void.

The court decided in favour of the motion made by the plaintiffs, and adjudged, that the third count did not constitute any legal part of their declaration, and that on the trial of the cause, it should be wholly disregarded.

The defendants thereupon pleaded the general issue ; on which the cause was tried, at the term of the court in *December*, 1845.

On the trial, the plaintiffs offered no evidence in support of the first count, and admitted that the verdict must be in the defendant's favour on that count.

In support of the second count, the plaintiffs claimed and offered evidence to prove, that on the 5th of *October*, 1844, they owned the sloop *Byron*, of which *Ebenezer Mills*, one of the plaintiffs, was master ; that the sloop, at that time, had on board a quantity of lumber, a part of which belonged to *Thomas B. Fanton*, and a part to the defendant, which lumber the plaintiffs had received, at *Albany* in the state of *New-York*, on board the sloop, under an agreement to transport it to the harbour of *Westport* in this state, and there deliver it to *Fanton* and the defendant respectively, for freight to be by them respectively paid to the plaintiffs therefor ; that while said sloop, having said lumber on board, constituting her entire cargo, was on her way from *Albany* to *Westport*, she

was struck by a squall of wind and driven upon a rock in
*Long-Island* sound, by which a hole was broken in her hull,
and she filled with water, and was in consequence thereof in
a sinking condition, and wholly unable to proceed on her voy-
age to said harbour; that this accident happened solely by a
peril of the sea, and without any fault of the plaintiffs, or of
those navigating the sloop; that thereupon one *Joseph Nash*,
by the procurement of *Mills*, the master, towed the *Byron*
from the place where she struck on a rock, to or near the har-
bour of *Southport* in this state, where the plaintiffs procured
Messrs. *Pike & Sturges* to take the lumber in their vessel, the
*General Mercer*, from the *Byron* to the harbour of *Black-
rock* in this state, and there unlade it; and that the plaintiffs
there delivered to *Fanton* and the defendant the lumber which
belonged to them respectively; which, it was admitted, they
respectively received of the plaintiffs.  There was no evi-
dence that the defendant ever in fact requested them to do
either of these acts, after the *Byron* struck on the rock; or
requested them to incur any expenses whatever in causing her
to be towed to *Southport*, or the lumber to be transported in
the *General Mercer* to *Black-rock*, and unlade there; or that
the defendant ever promised the plaintiffs to pay them such
expenses, or any part thereof; but the plaintiffs claimed, and
offered evidence to prove, that by reason of the disabled and
sinking condition of the *Byron*, after she struck upon the
rock, all the acts done, and procured to be done, by them,
were necessary for the preservation of the lumber, and its
delivery to *Fanton* and to the defendant respectively.  And
they further claimed, that the expenses so incurred by them,
were, by the principles of general commercial law, proper
subjects of general average, to be apportioned between the
plaintiffs, as owners of the vessel and entitled to the freight,
and *Fanton* and the defendant, as owners of the lumber—
such apportionment to be made in reference to the value of
the vessel and the amount of freight, and the value of the
lumber, which the plaintiffs offered to prove by legal evi-
dence.

The defendant denied, that the plaintiffs had any right, by
reason of the facts and circumstances proved, to recover at all
against him; because all that had been done by them, was
what they were bound to do, by their undertaking to trans-

*Fairfield,*
June, 1846.

Lyon
*v.*
Alvord.

port the lumber from *Albany* to the harbour of *Westport* and there deliver it; and because he had never requested the plaintiffs to do any of the acts which they claimed to have done, after the vessel struck upon the rock, nor promised to pay them any thing for the services rendered or the expenses incurred. The defendant, therefore, objected to the whole of the testimony so offered by the plaintiffs.

The court decided, that this evidence was admissible, under the second count in the declaration; and it was heard by the jury.

The court charged the jury, that upon the facts which the plaintiffs claimed to have proved, if the jury found them to be true, the plaintiffs would be entitled to recover on the second count, notwithstanding the defendant never had requested the plaintiffs to do any of the acts by which said expenses were incurred, and notwithstanding the defendant had never promised the plaintiffs to pay them for such expenses, or any part thereof; and that if they should find for the plaintiffs, they would be entitled to recover of the defendant, on the principle of a general average, as claimed by the plaintiffs, a proportion of what was proved to have been necessarily expended, by the plaintiffs, after the *Byron* became disabled and in a sinking condition, in causing her to be towed, and the lumber to be transferred from her to the *General Mercer,* and to be taken to and unloaded at *Black-rock.*

The jury returned a verdict in favour of the plaintiffs, on the second count, for 27 dollars, 10 cents, damages. The defendant then moved in arrest of judgment for the insufficiency of the declaration. This motion was overruled by the court, and final judgment rendered on the verdict. The defendant thereupon brought a writ of error in the superior court; which was reserved for the advice of this court.

*Hawley,* (with whom was *Swift,*) for the plaintiff in error, contended, 1. That the proceedings should have been quashed. The action was entire, and the whole of it without the justice's jurisdiction. The last count is as much a part of the matter in demand as either of the others. A demurrer for misjoinder must be to the whole declaration, clearly showing that the misjoinder vitiates every part; and this even in cases where the court has jurisdiction of each separate cause

of action. But here the justice could in no form of action have taken cognizance of the last count. 1 *Wms. Saund.* 285. *Whipple* v. *Fuller,* 11 *Conn. R.* 582. 587.

2. That the charge was erroneous. The plaintiffs, having taken the lumber, to transport it to and deliver it at *Westport,* for a compensation, were bound to carry and deliver it accordingly; and if their conveyance broke down by the way, and they had to procure another, the expense thereof cannot be thrown on the defendant. There can be no recovery, in any case, for such expense, by the *carriers ;* nor by any, except those who, in certain cases, are constituted agents of the owners of the property, or who claim as salvors. But the carriers—the original contractors—can never claim as salvors. *Bradhurst* & al. v. *Columbian Insurance Company,* 9 *Johns. R.* 9. *The same* v. *The same, Id.* 17. *Schieffelin* v. *New York Insurance Company, Id.* 21. *Saltus* & al. v. *Ocean Insurance Company,* 12 *Johns. R.* 107. *Hunter v. Prinsep,* 10 *East,* 378. 383. *Whitteridge* v. *Norris,* 6 *Mass. R.* 125. *Heyliger* v. *New York Firemen Insurance Company,* 11 *Johns. R.* 85. 3 *Kent's Com.* 210, 11. 213. 219. 228. 232. & seq. *Birkley* & al. v. *Presgrave,* 1 *East,* 220. 227, 8. *Hobart* & al. v. *Drogan* & al. 10 *Pet.* 108. 122. *Abbott,* 384, 5. General average is where something is intentionally sacrificed for the preservation of the rest. 3 *Kent's Com.* 232. This case is not at all of that character.

3. That the second count, on which the verdict was given, is insufficient. In the first place, no request is averred. Secondly, the defendant is described, not as owner of the lumber, or as at all interested in it, but as *consignee* merely; and it does not appear from any facts alleged, that he was in any way *benefited,* by the acts of the plaintiffs. *Chitt. Cont.* 381. n. *Shields* v. *Davis,* 6 *Taun.* 65. *Shepard* v. *DeBernales,* 13 *East,* 565. *Abbott, pt.* 3. *c.* 7. See forms 1 *Saund. P. & Ev.* 209. [171.] 2 *Chitt. Pl.* 21. 1 *Chitt. Pl.* 338. 1 *East,* 220. Thirdly, the defect is not cured by verdict. *Gould Pl.* 502, 3. *Rushton* v. *Aspinall,* Doug. 679. 683. *Dale* v. *Dean,* 16 *Conn. R.* 579. 586, 7.

*Dutton,* (with whom was *Robinson,*) for the defendants in error, contended, 1. That the judgment appealed from was not void. There was at least one count within the jurisdic-

tion of the justice ; and one such count is sufficient to sustain a judgment, which will be regarded as valid until regularly set aside.    An erroneous judgment, if not totally void, may be appealed from.    *Wolcott* v. *Coleman*, 2 *Conn. R.* 324. *Fox* v. *Hoyt*, 12 *Conn. R.* 491. 496.    *Voorhees* v. *United States Bank*, 10 *Pet.* 472.    *Ladbroke* v. *James, Willes*, 201. 1 *Stark. Ev.* 57.    3 *Stark. Ev.* 1251.    Jurisdiction is given by the several counts, and not by the aggregate.    *Denison* v. *Denison*, 16 *Conn. R.* 34.    If parties should submit to arbitration some things that could, and some that could not, be submitted, could not the arbitrators act at all on the submission ?    *Utile per inutile non vitiatur.*

2. That the charge of the court to the jury, and its decision upon the evidence adduced by the plaintiffs, were correct. In case of perils of the sea, whatever loss is voluntarily incurred for the benefit of both vessel and cargo, is matter of general average.    *Bulkley* v. *Presgrave*, 1 *East*, 220. *Beawes' L. M.* 148.    *Abbott* 383. n. 385, 6. 398.    3 *Kent's Com.* 212. 232.    Accordingly, it has been held, that expenses of going into port to refit, ware-housing, &c., are subjects of general average.    3 *Kent's Com.* 235, 6. 238.    *Abbott*, 381, 2.    *Bedford Commercial Insurance Company* v. *Parker*, 2 *Pick.* 1. 8.    *Walden* v. *Girard*, 4 *Dal.* 274.

3. That the motion in arrest was properly overruled.    In the first place, the second count would be good on demurrer. The plain import of the language of that count, is, that the defendant was owner of the lumber.    The term *consignee* is often used, by courts and authors, as synonymous with *vendee*. 1 *Sw. Dig.* 381.    *Chitt. Contr.* 432. 436.    This count shews, that the lumber was *delivered* to the defendant, and that the defendant *received* it.    This shews possession, which implies ownership.    1 *Sw. Dig.* 581.    But secondly, if there was any defect, it has been cured by verdict.    It is a title defectively set out, and not a defective title.    Some interest in the defendant is averred.    *Mackmurdo* v. *Smith*, 7 *Term R.* 518. *Ward* v. *Harris*, 2 *Bos. & Pul.* 265.    *Hendrick* v. *Seeley*, 6 *Conn. R.* 176.    *Dale* v. *Dean*, 16 *Conn. R.* 586.    Ownership was a matter involved in the issue.    Without proof of it, the plaintiffs could not have had a verdict.

HINMAN, J.    Without referring particularly to the precise

state of the pleadings, in the county court, arising upon the plaintiffs' motion to erase the third count from the declaration, it is sufficient to say, that both parties claimed and insisted, that the justice, before whom the suit was originally brought, had no jurisdiction of that count; and that this appeared upon the face of the count itself. For this reason the plaintiffs moved to erase it; and the defendant moved to quash the whole proceedings; because this count, being originally contained in the declaration and appearing with the others in the copies sent to the county court, showed, as he insisted, that the justice had in fact taken jurisdiction and acted upon it.

The county court held, that this count did not constitute any part of the plaintiffs' declaration; and directed that it be disregarded on the trial of the cause. In this, we think the court was right. Immaterial matter will not vitiate a plea or declaration, even when it is incorporated in the plea, or in any of the counts; but may be struck out, on motion, or wholly disregarded; and matter of which the justice had no jurisdiction, must be immaterial matter, so far as he is concerned. If it stood alone, it would be obvious that he could do nothing with it. He could render no judgment upon it, unless, upon a plea to the jurisdiction, he rendered a judgment dismissing it for the want of jurisdiction. If it was so incorporated into one of the counts, that it could not be separated from the matter of which the justice had jurisdiction, it would, undoubtedly, vitiate the count, and might, for that purpose, become material. But, as it is entirely separate and distinct from the other counts, its being included in the declaration with them, cannot have that effect. It is wholly unlike the case of misjoinder of counts. There was no misjoinder here, for the reason, that the 3rd count was not, in contemplation of law, before the justice at all.

As the justice, then, had no power to take cognizance of this count, it was not before him in any proper legal sense: and his judgment must be presumed to have been rendered upon the counts of which he had jurisdiction. The county court, therefore, did right in considering this count as matter of which the justice had nothing to do; and in presuming that, he acted correctly; and disregarded it, on the trial before him. *Fox* v. *Hoyt,* 12 *Conn. R.* 491.

With the other two questions in the case we have had more

*Fairfield,*
June, 1846.

Lyon
*v.*
Alvord.

difficulty. First, in regard to the charge of the county court.

The bill of exceptions shows, that the plaintiffs' vessel, the *Byron,* on her way from *Albany* to *West-port,* with a cargo of lumber, a part of which was consigned to the defendant, was driven, by stress of weather, on a rock, in *Long-Island Sound,* and a hole broken in her hull; in consequence of which, she filled with water, and became unable to proceed on her voyage, and was in danger of sinking; that the plaintiffs thereupon procured her to be towed into the harbour of *South-port;* and there they procured another vessel, the *General Mercer,* to take the cargo to *Black-rock,* where it was delivered to the defendant, and he received it. But there was no evidence that the defendant requested any of the acts, either of towing the vessel into *South-port,* or in procuring the cargo to be transported to *Black-rock.* But the plaintiffs claimed, that by reason of the disabled condition of the vessel, after she struck, these acts were necessary to preserve the vessel and cargo, and to deliver the cargo to the defendant, and were proper subjects of a general average contribution, to be apportioned between all parties in interest; and that the law would imply a promise from the defendant to pay the plaintiffs his just proportion of the expenses incurred by them.

The defendant denied any liability, in consequence of said acts, and claimed, that, inasmuch as it was admitted, that the defendants had never requested the plaintiffs to do any of the said acts, or to incur any of said expenses, they could not recover. But the court charged the jury, in conformity to the plaintiffs' claims, that they were entitled to recover the defendant's proportion of this expense incurred in towing the vessel into the harbour of *South-port,* and in causing the lumber to be transferred to the *General Mercer, and in causing the said lumber to be taken and unladed at Black-rock.*

The charge of the court, so far as it related to the towing of the plaintiffs' vessel into the harbour of *South-port,* and lightening her there, in order to preserve the vessel and cargo, after the accident, was unexceptionable.

General average means that contribution to which the owners of the ship, cargo and freight, become liable among themselves, or a voluntary sacrifice of a part of the ship or cargo, or a voluntary expenditure of money, or performance of service, for the preservation of both ship and cargo, in a case of

general danger to both.   *Birkley* & al. v. *Presgrave*, 1 *East*,
220. 228. *Lewis* v. *Williams*, 1 *Hall*, 430. 3 *Kent Com.* 232.

It is therefore settled law to be found in the text-books, that where a ship or its cargo is in part voluntarily sacrificed to preserve the rest from impending danger, the loss must be borne by all parties concerned in the ship and cargo, in proportion to their respective interests. *Phil. on Ins.* 334. And when the cargo is put into lighters, in order to relieve the ship from a perilous situation, as to set the stranded vessel afloat, or lighten a leaky one and bring her into harbour ; the expenses incurred in such a measure are the subjects of a general average. *Stephens & Benecke* [*by Phillips*] *on Average*, 133.

The equitable principle upon which this doctrine rests, is, that one party ought not to profit by another's loss, where it is necessarily incurred for the purpose of preventing further loss to all parties in interest. Is is, therefore, a rule, that unless the loss is voluntary, as well as necessary for the preservation of both ship and cargo, no contribution can be claimed. *Marsh. on Ins.* 462.

Hence, loss by shipwreck, or a peril of the sea, is not the subject of general average ; but a loss incurred in order to save a vessel from shipwreck, or a peril of the sea, is. In this case, there was not any sacrifice of any part of the ship or cargo, like the cutting away of a mast, or the throwing a part of the cargo into the sea, in order to preserve the rest ; and no claim is made for the damage to the vessel caused by the striking on the rock : that was an involuntary loss, occasioned by the dangers of the sea. But there was the voluntary expenditure of money, to save the ship and cargo from the sinking condition in which the disaster left them ; and this was as much the subject of general average, as a regular jettison, made in order to preserve the ship and cargo from the perils of a storm at sea.

The case finds, that, by reason of the disabled and sinking condition of the vessel, after the accident, said acts were necessary for her preservation, and for the preservation of the cargo ; and being done for the benefit of all parties in interest, the expenses incurred in performing them, it would seem, ought to be borne by all.

Expenses incurred in recovering a vessel voluntarily run ashore to avoid danger, have been recovered as general average. *Bradhurst* v. *Columbian Insurance Company*, 9 *Johns.*

R. 9. So, expenses in getting off a vessel accidentally stranded, were held to be the subject of general average contribution. *Bedford Commercial Insurance Company,* v. *Parker,* 2 *Pick.* 1. And where, in consequence of cutting away a mast, an opening was made, which let water into the hold, and damaged the cargo, such damage was held to be the subject of general average. *Maggrath* v. *Church,* 1 *Caines,* 196. Indeed it is, as remarked by *Jones,* C. J., in *Lewis* v. *Williams,* 1 *Hall,* 430., a principle which runs through all the cases, that a sacrifice made for the rescue of the whole interest from a peril, which threatens the destruction of all, entitles the sufferers to contribution from those who are benefited by the loss.

In the case under consideration, the expense was necessary to rescue the vessel and cargo from the peril of sinking; it had the effect to save them; and it was voluntary, or it would not have been incurred. We have no doubt, therefore, that this part of the charge of the court was correct.

It was said in argument, that the plaintiffs having taken the lumber to transport and deliver it at *West-port,* for a compensation, are bound by their contract; and if their conveyance broke down, and they had to provide another, the expense of it ought to be borne by them, and not by the defendant. This would be so, if the breaking down was in consequence of a defect in the vessel or her equipments; because it is the duty of owners of ships to see that they are competent to perform the particular service for which they are freighted. *Lyon* v. *Mells,* 5 *East,* 428. But this has nothing to do with an accident or disaster happening in consequence of a peril of the sea, which no human foresight could guard against. Such disasters are always excepted, if not expressly in the bill of lading or contract of affreightment, at least impliedly, unless indeed, there is a contract to deliver the goods at all events.

The charge of the court, then, so far as it applied to the expenses incurred up to the time that the vessel and cargo were safely brought to *South-port,* was correct. But whether the expense of transportation, incurred after the lumber was safely put on board the *General Mercer,* was a proper subject of general average, is a question, which, if it had been made in the court below, would be deserving of serious consideration.

It does not appear that this expense was any greater than it

would have been, to have transported the cargo in the plaintiffs' own vessel, after she was repaired. Nor does it appear that the vessel was so disabled, but that with very slight repairs, she might have proceeded and performed the voyage.

A hole was broken in her hull, by which she filled with water, and in consequence of this, she was unable to proceed, at the time. But it is the duty of the owner of a vessel, which has been injured by a peril of the sea, if she is capable of being repaired in a reasonable time, to repair her, and continue the voyage; or he may hire another ship to carry the goods to the port of delivery; and if he does either, he will be entitled to the whole freight, but to nothing more. *Luke* v. *Lyde,* 2 *Burr.* 887. *Herbert* v. *Hallett,* 3 *Johns. Ca.* 93.

The general rule is, that the delivery of the goods at the port of delivery, is necessary to entitle the owner of the vessel to freight; and such delivery is a condition precedent, which must be fulfilled. 3 *Kent's Com.* 219. And it is only where the original voyage is broken up, or the ship is so disabled that she cannot, in a reasonable time, be refitted, that any *increased freight* may be charged as arising from the hire of a new ship; as, where a ship puts into a port in distress, and is condemned as unseaworthy, the master then becomes, according to the *American* cases, it is said, the agent of the owner of the cargo, and as such agent, he may act in the port of necessity for the best interest of all concerned, and may hire another vessel for the completion of the voyage, and charge the cargo with the increased freight; and in these cases, generally, he is entitled to nothing but such increased freight. 3 *Kent's Com.* 212. In the case of *Searle & Adams* v. *Scovill,* 4 *Johns. Ch. R.* 218., which is one of the cases on which this doctrine rests, the ship had been condemned as unseaworthy, and sold for the benefit of all concerned, in the port of distress, and was, therefore, absolutely disabled from completing her voyage; and the master, by the advice of the *American* consul, hired part of another vessel to stow so much of the cargo as had not been sold, to pay expenses. For this service he agreed there should be paid the sum of 2000 dollars; and it was held, that the act of the master in contracting for the transportation from the port of distress to the port of delivery, was valid; but it was the *increased* freight—the 2000 dollars, that the defendant was

held bound to pay, in consequence of the new contract of hiring made by the master.

The other case to which Chancellor *Kent* refers, in support of this doctrine, is that of *Mumford* v. *The Commercial Insurance Company,* 5 *Johns. R.* 262. In this case the vessel was captured, and, with the cargo on board, was sent to *Halifax,* and libelled; the ship was acquitted, on the 20th of *November,* 1804, and restored, but the goods were detained for further proof. The master tendered the ship to bring the goods to *New-York,* the port of delivery; but as they were detained, he sailed without them, and they were not released until *May,* 1806, when the owner of the goods was obliged to hire them brought, in another ship; and it was held, that the additional freight was a charge incurred by the capture, for which the insurers were liable. The insurers could not, in that case, have been subjected to any thing more; because, as *Kent,* J., remarked in his opinion, " the insurer has, in general, nothing to do with the transportation." Still the *owner* of the goods might, perhaps, have been liable to pay both the original freight for their transportation to the owner of the first ship, and the increased freight to the owner of the new ship: to the first, because he was ready and willing to bring on the goods; and to the second, because he did, in fact, bring them. But in *Searle & Adams* v. *Scovill,* he was not liable for the original freight. The freighter, after the voyage was broken up, was entitled to his goods without paying anything; because, as a general rule, and, except in extraordinary cases, the freighter is not liable to both the original and the increased freight also; and if, as we suppose was the case here, the lumber was delivered to the defendant, at *Black-rock,* as the port of delivery, then, the voyage being performed, the ship-owners had earned their freight, and they were entitled to nothing more as transportation merely. *Hunter* v. *Prinsep & al.* 10 *East,* 378. 393. *Herbert* v. *Hallett,* 3 *Johns. Ca.* 93. *Searle & al.* v. *Scovill,* 4 *Johns. Ch. R.* 218. 3 *Kent's Com.* 212.

If this clearly appeared in the bill of exceptions, and the objection had been taken in the court below, we should have thought that that part of the charge of the court, which authorized the jury to give damages for the expense incurred in causing the lumber to be taken to and unladed at *Black-rock,*

could not be supported ; but no such distinction was taken, and it has not been made a question here. On the contrary, it appears that the defendant below objected to the whole evidence before the court, and claimed that the plaintiff was not entitled to any thing ; whereas the greater part of the evidence was clearly admissible, and the plaintiff was entitled to the defendant's proportion of all the expenses incurred, except such as were paid for transportation merely. This, therefore, not having been made a point, on the trial in the county court, ought not to vary the result to which we may come on other parts of the case ; and it is noticed only that it may not be understood that we intend to sanction, as law, this part of the charge. *Nichols* v. *Turney,* 15 *Conn. R.* 102.

By the bill of exceptions, it appears, that the original agreement was, to transport the lumber from *Albany* to *West-port,* and there deliver it to the defendant ; but it was in fact taken to *Black-rock,* and there delivered. The object of this variation in the port of delivery, is not shown. If the going to *Black-rock* was only a part of the process of lightening the vessel, in order to save it and the cargo, or to fit the vessel for repairs, that the voyage might be completed, then it would be a part of the service for which the plaintiffs were entitled to a general average contribution ; and in this view of it, the charge of the court was correct.

The plaintiffs recovered upon the second count in their declaration, and the defendant claims, in his motion in arrest, that this count is insufficient, because no consideration is stated or alleged for the promise mentioned in that count. And, as it is necessary in declaring upon a promise not under seal, to state the consideration on which it is founded, we have examined this count with some care, in order to see if it can be supported ; but we are satisfied, that it cannot. There is a total omission to state any sufficient consideration for the promise. The consideration in fact stated, is, the supposed benefit which the defendant, as consignee of the lumber, received by the saving of it. But as consignee merely, he received no benefit by the saving of the lumber. If he had been the owner, he would have received a benefit ; and that would have been a good consideration for the promise. Hence, the plaintiffs' counsel have attempted to show, that

*Fairfield,*
June, 1846.

Lyon
*v.*
Alvord.

the import of the language of the count, is, that the defendant was the *owner ;* and it is said, that the term *consignee* is often used as synonymous with owner. We are not aware of any such use of the term ; much less, that such is the fair import of it. That a man may be, and often is, both consignee and owner of goods, cannot be questioned ; but still, all that is meant by the term, is, one to whom goods are consigned ; and so far from any necessary, or even natural inference, arising from its use, that the consignee is in fact owner, it is believed that the consignor is as often the owner of the goods consigned, as that the consignee is. The term is nearly synonymous with factor, a person to whom goods are sent for sale, or safe-keeping.

The consideration is the very gist of the action of *assumpsit ;* and though, when past or executed, it may be, and usually is, stated, by way of recital, and need not be directly averred ; yet, it must, in some shape, be alleged and proved, or the action will fail. *Gould's Pl. ch.* 3. *sec.* 47.

It is said however, that the defect, if it be one, is cured by the verdict. We think otherwise. This is not the defective statement of a good consideration, nor is it the statement of any material fact from which it follows, as a necessary concomitant, that the defendant was either the owner of the lumber, or in any way benefited by the saving of it. It is rather a statement of an immaterial fact, as the consideration ; and, therefore, is what the books call the statement of a defective title. Had it been alleged, that the service was performed, or the expenses incurred, at the defendant's *request*, that would have been good ; but neither that, nor any fact from which it can be inferred that the defendant was benefited by the service, is stated. In principle, the case is not distinguishable from what it would have been, if, instead of the use of the term *consignee,* the plaintiffs had alleged that the lumber had been sent, by the owner of it, from *Albany* to the defendant, as the agent of the owner ; and then, after stating the accident, and the service performed in order to save the ship and lumber, in the manner which has been done in this count, it had been alleged, that " in consideration that the plaintiffs had incurred an equitable proportion of the expenses for his, the defendant's benefit," as the agent of the owner of the lumber, he promised, &c. Such an allegation of consideration is

obviously bad, and is unaided by the verdict. *Gould's Pl. p. 427. sec.* 13. *Rushton* v. *Aspinall, Doug.* 679. *Dale* v. *Dean,* 16 *Conn. R.* 579.

*Fairfield,*
June, 1846.

In this opinion the other Judges concurred.

Judgment reversed.