### ISAAC BLAKESLEE vs. PATRICK MURPHY.

*M* brought an action against *B* before a justice of the peace, the only service upon *B* being by leaving a copy at his place of residence. He was at that time confined in an insane asylum in another part of the state, and neither he nor any one in his behalf had any notice of the suit, and *M* got judgment by default for $100 damages and $15 costs. *B* afterwards brought a petition to the Superior Court for an injunction against the collection of the judgment, which court decreed a perpetual injunction. Upon a motion in error by the respondent, it was held—

1. That the decree was not erroneous on the ground that there was adequate remedy at law by a writ of error, as the writ might not be so served as to operate as a supersedeas.

2. That parol evidence was admissible to prove that the petitioner had no notice of the pendency of the action against him, the proceeding not being a collateral impeachment of the judgment, but a direct proceeding to set it aside.

3. That the general rules governing petitions for new trials and limiting the granting of them, were not applicable, and that the petitioner therefore was not bound to show that he had a good defence against the action.

4. That by a perpetual injunction against the collection of the judgment the respondent was not deprived of his cause of action by reason of its merger in the judgment, since the judgment being void by reason of want of jurisdiction over the person of the petitioner, the original cause of action was not merged in it.

5. But held that the Superior Court had no jurisdiction by reason of the amount involved being less than five hundred dollars, the Court of Common Pleas having exclusive jurisdiction of all causes in equity wherein the "matter in demand" does not exceed that sum. (Two Judges dissenting.)

The "matter in demand," as used with reference to suits in equity, does not necessarily mean a money demand, but the pecuniary value of the matter in controversy.

Here the matter in controversy was the judgment against the petitioner for $115, and that sum was to be regarded as its value.

PETITION for an injunction against the collection of a judgment at law obtained by the respondent against the plaintiff; brought to the Superior Court in New Haven County.

The petition alleged that on the 6th day of September, 1875, the petitioner was insane, and confined as an insane person in the Retreat for the Insane at the city of Hartford, and that at that time the respondent brought an action at law against him before a justice of the peace in Waterbury in New Haven County, where the respondent then resided, in which no other service was made upon him than by the officer leaving an attested copy of the writ at his usual place of abode in the town of Thomaston in Litchfield County; that Augustus Hamilton of Watertown in Litchfield County, through whom the petitioner brought his petition, then was and had ever since been his conservator; that the petitioner's former place of abode in Thomaston had not been occupied by him since his confinement in the Retreat for the Insane and was at the time the copy of the writ was so left there uninhabited, and that said conservator had no notice whatever of the pendency of the suit and that no notice whatever reached the petitioner; that in consequence judgment was rendered against the petitioner upon his default of appearance for the sum of $100 damages and $15.37 costs of suit, and that execution had been issued upon the judgment and placed in the hands of an officer, who threatened to levy the same upon the petitioner's estate; praying for an injunction against such levy and the collection of the judgment out of the property of the petitioner.

The case was heard upon a denial of the facts before *Hitchcock, J.,* who found the allegations of the petition to be true, but found that it did not appear whether the petitioner had a good defense against the action at law. Upon the hearing the respondent claimed that the petitioner had adequate remedy at law by a writ of error and that a court of equity therefore had no jurisdiction; also that the proceeding was in effect a petition for a new trial and that the Superior Court could not

grant a new trial of a cause in a justice court; also that no evidence was admissible to show, in contradiction of the record of the justice court, that the petitioner had no notice of the pendency of the justice suit. The court overruled these claims of the respondent, allowed the petitioner to show that he had no notice of the pendency of the justice suit, and passed a decree perpetually enjoining the respondent from levying any execution issued upon the judgment.

The respondent brought the record before this court by a motion in error, assigning as error the above rulings of the court.

*J. O'Neill*, for the plaintiff in error.

1. The Superior Court had no jurisdiction over the petition. 1st. Because the value of the "matter in demand" in the petition is under five hundred dollars. The Court of Common Pleas alone, if any court, had jurisdiction of the subject matter. Gen. Statutes, tit. 19, ch. 4, sec. 2. 2d. Because the petitioner has adequate remedy at law. Our statute is not declaratory, but imposes a new and stricter rule, imposing on the petitioner the obligation of showing he has no adequate remedy at law. If no copy was left with the conservator, a writ of error will lie. A writ of error operates as a *supersedeas* of the execution. If the respondent actually obtained the money on his execution, and the judgment was set aside for error, he is abundantly able to pay it back. The contrary is not alleged. It must appear from the petition that there is no adequate remedy at law. The general allegation is not sufficient. *Whittlesey* v. *Hartford, Prov. & Fishkill R. R. Co.*, 23 Conn., 431; *Wooster* v. *Glover*, 37 id., 315.

2. The petitioner, in effect, asks for a new trial. The gist of the petition is that injustice has been done him; that he has had no day in court; and he asks for a new trial. But new trials have never been granted of justice suits, except in a single instance we shall mention. *Page* v. *Camp*, Kirby, 7; *Stone* v. *Stevens*, 12 Conn., 227. The single instance is, when the defendant is absent from the state, and has had no notice of the suit, the court to which an appeal might be taken

may grant a new trial and proceed to final judgment itself, if the defendant shall make it appear that the judgment was wrongfully obtained against him and that he had good ground of defense. Gen. Statutes, tit. 19, ch. 15, sec. 4. Equity will not grant new trials, however unjust the judgment or great the hardship, unless the judgment was obtained by fraud, accident, or mistake, unconnected with any negligence or inattention on the part of the judgment debtors. *Carrington* v. *Holabird*, 17 Conn., 530, and 19 id., 84; *Pearce* v. *Olney*, 20 id., 544; *Day* v. *Wells*, 31 id., 349. Otherwise legal proceedings would be endless. *Lovejoy* v. *Webber*, 10 Mass., 104. Neither fraud, accident, nor mistake, is set up in this petition. And the finding here is that it does not appear that any injustice was done by the judgment in the justice court. In this respect the petitioner failed in his proof, and that failure should have been fatal. *Wooster* v. *Glover*, 37 Conn., 315.

3. There was error in admitting evidence. 1st. The law conclusively presumes that the process in the justice court was legally served on the defendant. Admitting parol evidence to contradict that presumption, and to show that the petitioner was an insane patient at Hartford, and that he had no actual notice of the suit, was error. *Coit* v. *Haven*, 30 Conn., 190. 2d. An insane person can never have actual notice of the pendency of a suit. The law does not require impossibilities. Neither does the law require that his conservator should have notice. *Snow* v. *Antrim*, Kirby, 174.

4. There was error in the decree of the court. The petitioner alleges that the judgment of the justice court is grossly unjust. If any part of that judgment is just, that amount, how small soever it may be, is merged in that judgment. We are deprived of our cause of action by the merger, and we are deprived of the judgment in the justice court by this decree. We are perpetually enjoined. In this there is error. *Goodsell* v. *Olmstead*, 42 Conn., 354.

*C. W. Gillette* and *G. E. Terry*, for the defendant in error.
1. The petitioner had not adequate remedy at law. His

only legal remedy to avoid the judgment of the justice court would be by writ of error; but this would not be *adequate*, as execution had been issued, and it would not operate as a *supersedeas.* 1 Swift Dig., 794. Hence his resort to equity to prevent a wrong, that is, the levy of an execution issued upon a "pretended judgment, irregular, invalid, excessive, and grossly unjust."

2. The Superior Court had jurisdiction. There is no allegation or finding that the "value of the matter in demand is under five hundred dollars." There is no money demand in controversy; but like a bill to restrain waste, or the diversion of a water-course, or the destruction of ancient lights, it is to prevent the doing of an injury.

3. The court properly admitted evidence to show that no service was made on Blakeslee. This is not a collateral impeachment of the judgment, but a direct proceeding to set it aside, and in such a proceeding such evidence is always admissible.

4. Blakeslee was insane, and confined in the Retreat for the Insane at Hartford. If the officer left a copy at Thomaston, he manifestly could have had no actual notice of the pendency of the justice suit. He could not appear to defend in person. He was under charge of a conservator, who should have had notice of the suit. *Snow* v. *Antrim*, Kirby, 174. It is not claimed that the conservator had *any* notice. Surely, equity ought to interpose to prevent a wrong to an incapable, insane person, and prevent his estate being squandered.

CARPENTER, J. The respondent brought his action against the petitioner returnable before a justice of the peace. The only service was by leaving a copy of the process at the petitioner's place of residence in Thomaston. At that time he was confined in the Retreat for the Insane in Hartford; and neither he, nor any one in his behalf, received any notice of the pendency of the suit, and no one appeared to defend. The respondent obtained a judgment for one hundred dollars damages, and for fifteen dollars and thirty-seven cents costs of suit, on which execution issued. The petitioner obtained

a decree in the Superior Court permanently restraining the respondent from serving and collecting the execution. The record is brought before this court by a motion in error.

1. It is objected that the decree is erroneous for the reason that there is adequate remedy at law; that is, that the judgment against the petitioner might have been reversed on a writ of error. It is true a writ of error, if served before the officer commenced the service of the execution, would have operated as a *supersedeas.* It does not appear whether service of the execution had actually been commenced or not, nor does it clearly appear that a writ of error could have been served so as to operate as a *supersedeas;* and as it is manifestly inequitable and unjust that a judgment obtained without notice to the defendant should be enforced, we are of the opinion that it is not clear that the remedy at law is adequate and complete, and that the judgment ought not to be reversed for that reason.

2. It is next objected that parol evidence to prove that the petitioner, the defendant in the action at law, had no notice of the suit, was inadmissible. This objection is not well taken. Parol evidence is admissible in such cases to prove that the defendant had no notice on a plea in abatement, a writ of error for error in fact not apparent on the record, and on a petition in chancery to set aside the judgment.

3. It is further objected that this is in effect a petition for a new trial, and that it is incumbent on the petitioner to show that he has a good defense to the action at law; and further, that the principles which govern courts of equity in granting or refusing new trials, are applicable to this case.

In this we think the respondent's counsel are mistaken. In such cases, usually if not always, the party seeking relief in equity had notice of the suit, and was heard, or might have been heard, before the rendition of the judgment. The court acquired jurisdiction of the cause by legal service of the process; and there is every presumption that the proceedings were legal and regular, and that the judgment was just and equitable, until the contrary affirmatively appears. Not so in the present case. The defendant in the action at law had no

notice and has not had his day in court. The judgment is in effect void, and there is no presumption in favor of the judgment creditor. Positive law requires that a defendant shall have legal notice of the suit, and a reasonable opportunity to appear and defend before a judgment against him can be legally obtained; and neither reason nor sound policy will require a defendant against whom a judgment has been obtained without notice, to try the merits of the cause on a petition in chancery to set aside the judgment.

This is also an answer to another claim made by the respondent—that his cause of action is merged in the judgment, and that he is deprived of his judgment by the decree. There can be no merger in a judgment which is void for want of jurisdiction over the parties. This case differs from the case of *Goodsell* v. *Olmstead*, 42 Conn., 354. In that case the court had jurisdiction, and the judgment was not void. It was just and equitable as to a part of the amount, and fraudulent as to the balance. This court held that the judgment creditor should not be restrained from collecting on that judgment the amount justly due. In this case, the fact being established that there was no notice, the judgment becomes and should be declared void *in toto*. We see no reason why a court of equity should give effect to it, or any part of it.

4. One other question remains to be considered; and that is, whether the Superior Court has jurisdiction of this petition. On this point a majority of the court feel constrained to reverse the judgment of the court below. The statute provides that "all causes in equity wherein the matter in demand does not exceed five hundred dollars," &c., "shall be brought to the Court of Common Pleas," and "all causes wherein the matter in demand exceeds five hundred dollars shall be brought to the Superior Court." Gen. Statutes, page 413, secs. 2, 3. The question turns upon the construction of the phrase "matter in demand." It is contended that it applies only to those cases in which the petitioner seeks to recover a given sum of money; and has no application to a case like this, in which he resists the payment of an unjust demand.

We think this construction is too narrow. The statute, thus construed, furnishes a rule in a limited number of cases only, as comparatively few petitions are brought simply to recover money. Many are brought to aid the petitioner in resisting the payment of money, and it is quite as important to furnish a rule of jurisdiction in the latter cases as in the former. Nearly all petitions relate to money or to property which has a specified or ascertainable value. Such money or property constitutes the matter in dispute or controversy, and we think the legislature used the words "matter in demand" in this broad sense, meaning thereby the pecuniary value of the matter in controversy. There may be cases to which this test cannot be applied, but this is not one of them.

This construction is in harmony with other provisions of the statute. In the 2d section there is a proviso, that "bills in equity for relief ₂against any cause depending, or judgment rendered in the Superior Court, shall be brought to said court exclusively." Here is a clear implication that but for this proviso the general test, "matter in demand," would be applied to bills for relief against judgments rendered by, and causes pending in, the Superior Court. If so applied the matter in demand must mean the amount of the judgment rendered or the amount demanded in the pending action. It is difficult to see how any other meaning can be attached to it.

So also in petitions for foreclosure and to redeem mortgaged premises. Neither are strictly and technically petitions to recover money. The object of the one is, in terms, to obtain permission to *pay* money and remove an incumbrance from property. The object of the other is to cut off the right to redeem unless the debtor redeems within a limited time. The decree does not necessarily nor usually compel him to pay, · but payment is at his option. In these cases there was a question whether the value of the property mortgaged or the amount of the debt determined the jurisdiction; and if the latter, a further question arose whether the amount of the debt, including accrued interest, or the amount described in the mortgage, should be the test. To settle these questions it was provided by statute that "the amount of the debt or

liability secured by such mortgage or lien, as described in the mortgage or certificate of lien, shall be deemed to be the amount of the *matter in demand*." Here the legislature uses these words, "matter in demand," in the broad sense for which we contend. It is not satisfactory to say that this section was designed to make these words applicable to such cases. The obvious construction and meaning of the whole section is to provide that the debt, as described in the mortgage, rather than the property mortgaged, should be regarded as the matter in demand.

The matter in demand therefore in this suit is the amount of the judgment debt—one hundred and fifteen dollars and thirty-seven cents. That being less than five hundred dollars, the case is within the jurisdiction of the Court of Common Pleas, and on that ground alone the decree is erroneous.

In this opinion PARDEE and GRANGER, Js., concurred. PARK, C. J., and LOOMIS, J., while concurring upon all the other points, were of opinion that the Superior Court had jurisdiction.