GEORGE T. CARTEN ET AL. *v.* DANIEL C. CARTEN ET AL.

KING, C. J., MURPHY, ALCORN, SHANNON and HOUSE, Js.

Argued April 5—decided May 5, 1966

*William Reeves,* with whom was *Robert J. Cooney,* for the appellants-appellees (defendants).

*Vincent M. Simko,* for the appellees-appellants (plaintiffs).

House, J. This is an action in equity for discovery. A rather lengthy recital of facts is necessary to an understanding of the issues involved, and it may be noted at the outset that the court's finding is not subject to correction in any respect material to the determination of this appeal. In 1947, Daniel C. Carten, hereinafter referred to as the testator, died and by his will established a testamentary trust for the benefit of his wife and children. The corpus of the trust consisted of 996 shares of stock in the D. J. Carten Sand and Gravel Company, hereinafter referred to as the corpora-

tion, which were all of the shares of the corporation owned by the testator at the time of his death. The testator appointed his son Daniel C. Carten and his daughter Ethel C. Armstrong as trustees, and they have served as such since March 27, 1947. As a matter of convenience they will be referred to by their first names only. The testator's widow was the life tenant of the trust, which provided that she was to be paid during her life all of the net income or so much thereof as totaled $4800 per annum, whichever should be less, subject to such additional payments of income and principal as might be necessary for her reasonable support and care. Any remaining net income of the trust was to be paid semiannually to the testator's seven children on the basis of 40 percent to Daniel, 15 percent to Ethel and 9 percent to each of the other five children. Upon the death of the life tenant, which took place on June 28, 1962, the corpus of the trust was to be distributed to the seven children in that same proportion. Owing to stock dividends and a stock split, at the time of the death of the life tenant, the corpus of the trust consisted of 3984 shares of the outstanding 4000 shares of stock of the corporation. Daniel and Ethel, in addition to the 3984 shares which they held in their capacity as trustees, each individually owned four shares. The plaintiffs are two of the testator's children and accordingly beneficiaries under the trust, but neither individually owns any shares of stock in the corporation. During the life of the widow, the trustees filed with the Probate Court three periodic accounts, and each was accepted and allowed, and no appeal was taken. The last of these three accounts covered the period from May 1, 1954, to April 30, 1957. After the death of the life tenant, the trustees filed their final account for the

period from May 1, 1957, to August 17, 1962, and on September 26, 1962, the Stratford Probate Court accepted and allowed the account. The two plaintiffs in the present action objected to the acceptance of this final account and appealed to the Superior Court from its acceptance and allowance. That appeal, hereinafter referred to as the original action, is still pending, but further proceedings on it have been stayed pending final determination of the present case.

The corporation is a going concern with two ready-mix concrete plants and a sand and gravel plant. Its sand and gravel bank becomes depleted as material is removed from it, and the corporation has, for the last ten years, been seeking to acquire a new bank to replace its source of supply. The corporation has purchased marketable securities in the sum of $71,685.73 so that it will have a fund available for the purchase of a new sand and gravel bank, which is necessary for future business operations. Daniel is president of the corporation, and Ethel is the secretary and treasurer. Both of them were directors and officers of the corporation prior to the death of the testator, and, during the period of the trust, they, together with the widow-life tenant and another son of the testator, comprised the corporation's board of directors.

In the original action, the two plaintiffs appealed from the decree accepting the trustees' final account. As made more specific, their reasons of appeal include allegations that the accounting is incomplete because it does not show what receipts and expenditures of the trust corpus were allocated to principal and what to income, that it does not disclose whether or not all the net income of the trust was accounted for or paid to the beneficiaries, and that, on infor-

mation and belief, the trustees failed to pay the income of the trust from November, 1947. In addition, the reasons of appeal contain allegations that the account does not show how the net income of the trust was computed, that the trustees failed to manage the corporation for the best interests of the beneficiaries, and that they have failed to disclose the records of the management of the corporation.

The present action for discovery was brought by the same two children of the testator who took the appeal in the original action. The defendants are the two trustees, also sued in their individual capacities and as officers and directors of the corporation, the corporation and the corporation's accountant. In the present action, the plaintiffs allege the existence of the trust, that they are beneficiaries, that Daniel and Ethel are trustees under the will as well as officers and directors of the corporation, that the plaintiffs' appeal from the allowance of the trust account is pending, that the plaintiffs have suffered a substantial shrinkage of their interest in the trust, and that the plaintiffs believe the trustees have failed to perform the duties of their trust. It is also alleged on information and belief that a discovery and examination of the corporation's books and records will disclose material evidence in support of their claim and reasons for appeal and that the books and records are of such a character "as might be expected to supply facts as to whether or not the trustees properly performed their trust." By way of relief, the plaintiffs claim a decree ordering the defendants to produce for examination and copying "any and all financial statements of the D. J. Carten Sand and Gravel Corporation, books and account, check books, cancelled checks, financial records and journals, records

of sales, income, expenses, purchases, salaries, sale of assets and any and all documents of the company which may pertain to the defendants' operation of the company."

In short, in the sweeping style of the classical "fishing expedition," the plaintiffs have sought an unrestricted examination of all the records of the corporation in an attempt to search out evidence of a possible breach of the fiduciary duties of the defendant trustees. The attempt is not predicated upon any allegation or claim of fraud, embezzlement, misappropriation, bad faith or violation of any legal direction in the testator's will. In neither action have the plaintiffs made any claim of mismanagement of the corporation by the other defendants. Nor do we find here a situation where the trustees themselves created the corporation as a means either of accomplishing the purposes of the trust or of insulating their conduct from examination. The assertion of the plaintiffs that "[t]he defendants have hidden their management of the trust res behind a corporate shield" has no foundation in fact. The corporation was in existence before the trust was created, and the shares of stock in the corporation were placed in trust by the testator. It was these shares of corporate stock and not the corporation itself nor the corporate assets which comprised the trust res.

The trial court granted the relief requested to the limited extent of directing that the plaintiffs be permitted to examine the corporation's annual balance sheets, annual profit and loss statements and the general ledger, covering only the period since the date of the last preceding trust account, which had been accepted and allowed by the Probate Court and from which no appeal was taken. The parties

filed cross appeals to this court, each filing numerous assignments of error. It is the basic position of the defendants that the plaintiffs were not entitled to any discovery whatsoever. It is the contention of the plaintiffs that they were entitled to a much broader discovery, both in time and scope, than the court allowed.

Before discussing the merits of the appeal, we must first consider a claim by the defendants that the Superior Court did not have jurisdiction over the subject matter of this equitable bill for discovery because the complaint contains no allegation of fact or demand showing that the "matter in demand" is in excess of $5000. They rely on General Statutes § 52-6, which, when this action was brought, provided that the Court of Common Pleas should have exclusive jurisdiction of all civil actions for equitable relief only, wherein the matter in demand did not exceed $5000.

It does not appear that any question of jurisdiction was raised during the trial, or, more properly, before trial, by a motion to erase if the claim was that the want of jurisdiction appeared on the face of the record; *Felletter* v. *Thompson,* 133 Conn. 277, 279, 50 A.2d 81; or by a plea in abatement if facts which do not appear in the record were relied upon. Practice Book § 92; *Village Creek Homeowners Assn., Inc.* v. *Public Utilities Commission,* 148 Conn. 336, 340, 170 A.2d 732; see *Park Construction Co.* v. *Knapp,* 150 Conn. 588, 591, 192 A.2d 635. Lack of jurisdiction, however, may be raised at any time and not necessarily through the formality of a motion to erase, for the question, once raised, must be disposed of no matter in what form it is presented. *Watson* v. *Howard,* 138 Conn. 464, 467, 86 A.2d 67. "If the trial court lacks jurisdiction

the supreme court is without jurisdiction . . . ."
Maltbie, Conn. App. Proc. § 273.

In this instance, the question of jurisdiction was first raised, so far as the record discloses, in the defendants' request for a finding to review, as a question of law, the court's conclusion that it had jurisdiction over this equitable bill for discovery notwithstanding the lack of any allegation of fact or demand in the complaint that the matter in demand is in excess of $5000.

While noting that "[t]here may be cases to which this test cannot be applied," we held in *Blakeslee* v. *Murphy,* 44 Conn. 188, 195: "Nearly all petitions relate to money or to property which has a specified or ascertainable value. Such money or property constitutes the matter in dispute or controversy, and we think the legislature used the words 'matter in demand' in this broad sense, meaning thereby the pecuniary value of the matter in controversy." The amount of such a matter in demand is to be discovered only by reference to the complaint and never determined from the evidence taken on the trial. *Holmquist* v. *Spinelli,* 139 Conn. 429, 431, 94 A.2d 621.

The case at bar is an action in equity ancillary to the original action. The only relief sought is a discovery of facts to be used as evidence in that action. It is a pure bill of discovery as distinguished from a bill for discovery and relief. *Pottetti* v. *Clifford,* 146 Conn. 252, 257, 150 A.2d 207. "The power to enforce discovery is one of the original and inherent powers of a court of equity." *Peyton* v. *Werhane,* 126 Conn. 382, 388, 11 A.2d 800; *Skinner* v. *Judson,* 8 Conn. 528, 533. In the nature of the action there is no ad damnum claimed. Nor does the record disclose the pecuniary value of any

matter in controversy as it did in such cases as *Skinner* v. *Judson,* supra, and *Blakeslee* v. *Murphy,* supra. The value of the asserted right to a disclosure of facts cannot be calculated in money. Logically, "[w]here the jurisdiction of an inferior court is made by statute to depend on a specified amount, the jurisdiction does not attach to any case in which the right involved cannot be calculated in money." 21 C.J.S. 56, Courts, § 50. On the record it could not and cannot now be determined that the "matter in demand" is less than $5000 and accordingly within the statutory exclusive jurisdiction of the Court of Common Pleas.

Furthermore, "[a]s it did not appear on the face of the record that some other court had exclusive jurisdiction of the cause of action stated, the Superior Court itself rightfully retained jurisdiction of it." *Cocking* v. *Greenslit,* 71 Conn. 650, 652, 42 A. 1000. The *Cocking* case states several principles which must control in this instance. As it points out, a cause is not to be erased from the docket unless the want of jurisdiction plainly appears on the face of the record. The Superior Court is a court of general jurisdiction. " 'It has jurisdiction of all matters expressly committed to it and of all other matters cognizable by any law court of which the exclusive jurisdiction is not given to some other court. The fact that no other court has exclusive jurisdiction in any matter is sufficient to give the Superior Court jurisdiction of that matter.' [*State ex rel. Morris* v. *Bulkeley,* 61 Conn. 287, 374, 23 A. 186.] . . . [T]he general rule of jurisdiction . . . is 'that nothing shall be intended to be out of the jurisdiction of a Superior Court but that which specially appears to be so; and on the contrary nothing shall be intended to be within the jurisdic-

tion of an inferior court but that which is expressly so alleged.' . . . '[N]o court is to be ousted of its jurisdiction by implication.' [*Sullivan* v. *Vail,* 42 Conn. 90, 93.]" Id., 651; see generally *Heiberger* v. *Clark,* 148 Conn. 177, 189, 169 A.2d 652; *Walkinshaw* v. *O'Brien,* 130 Conn. 122, 133, 32 A.2d 547; *Norton* v. *Shore Line Electric Ry. Co.,* 84 Conn. 24, 32, 78 A. 587; *Sears* v. *Terry,* 26 Conn. 273, 280. "In a case of this kind every presumption which will support the judgment should be indulged. See *Grether* v. *Klock,* 39 Conn. 133, 136; *Lyon* v. *Alvord,* 18 Conn. 66, 73. An early case puts it succinctly: 'Jurisdiction possible—jurisdiction taken —every presumption supports the judgment.' *Stone* v. *Hawkins,* 56 Conn. 111, 115, 14 A. 297." *Port Chester Electrical Corporation* v. *Industrial Supply Co.,* 139 Conn. 16, 17, 89 A.2d 377. "There is nothing on the face of the record, so far as we are able to discover, that discloses any want of jurisdiction in the Superior Court to act upon the matter set forth in the complaint." *Wheeler* v. *New York, N.H. & H.R. Co.,* 70 Conn. 326, 328, 39 A. 443. Accordingly, the defendants cannot prevail on their claim of lack of jurisdiction.

The history, extent and limitations on the use of bills of discovery have recently been exhaustively examined by this court in *Pottetti* v. *Clifford,* 146 Conn. 252, 150 A.2d 207. There is no need to restate here the authorities and general principles so well detailed there. One or two, however, are of particular significance in the circumstances of the present appeal. A petitioner "should not be allowed to indulge a hope that a thorough ransacking of any information and material which the defendant may possess would turn up evidence helpful to the petitioner's case." Id., 263; 1 Pomeroy, Equity

Jurisprudence § 197b (5th Ed.). The right to discovery does not extend to all material facts but only to those which pertain to a party's cause of action or defense, and there must be a showing of good faith and probable cause. *Pottetti* v. *Clifford,* supra, 259. Also, as quoted from *Sinclair Refining Co.* v. *Jenkins Petroleum Process Co.,* 289 U.S. 689, 693, 53 S. Ct. 736, 77 L. Ed. 1449, " '[t]here are few fields where considerations of practical convenience should play a larger role.' " *Pottetti* v. *Clifford,* supra, 258. And "[i]n passing upon the bill, the court exercises a discretionary power within recognized limits." Id., 259; *Richmond's Appeal from Probate,* 59 Conn. 226, 243, 22 A. 82.

The original action to which the present bill is ancillary "lies on the borderline between the law of corporations and the law of testamentary trusts. Because of this Janus-like position, the topic has presented peculiar difficulties to the courts." Cahn, "Estate Corporations," 86 U. Pa. L. Rev. 136. As this author notes, "[t]here is an irreconcilable conflict in the cases as to the extent to which the probate court will inject itself into the internal administration of the corporation." Id., 139.

In Connecticut our probate courts have a limited jurisdiction. *Heiser* v. *Morgan Guaranty Trust Co.,* 150 Conn. 563, 565, 192 A.2d 44. "A court of probate can exercise only such jurisdiction as is expressly or by necessary implication conferred upon it by statute. General Statutes § 45-4; *Burnham* v. *Rayford,* 141 Conn. 96, 100, 104 A.2d 217; *Palmer* v. *Reeves,* 120 Conn. 405, 409, 182 A. 138. The Superior Court, on an appeal from probate, sits as, and has no greater power than, a court of probate. *Baldwin* v. *Tradesmens National Bank,* 147 Conn. 656, 659, 165 A.2d 331; 1 Locke & Kohn,

Conn. Probate Practice § 215." *Lockett* v. *Doyle,* 148 Conn. 639, 642, 173 A.2d 507; *Berkeley* v. *Berkeley,* 152 Conn. 398, 400, 207 A.2d 579. The jurisdiction of probate courts over testamentary trusts and the allowance of accounts of testamentary trustees is purely statutory. It has been extended through the years. See *Phillips* v. *Moeller,* 147 Conn. 482, 485, 163 A.2d 95; *Dettenborn* v. *Hartford-National Bank & Trust Co.,* 121 Conn. 388, 391, 185 A. 82. It has not, however, been extended to the adjudication of complex legal questions which pertain to the management and operations of a business corporation. Problems of internal administration, proper corporate reserves for working capital and replacement of wasting assets, dividend policy, exercise of business judgment and assumption of business risks may, in a proper case, be the subject of the broad jurisdiction of a general court of equity. *Pratt* v. *Pratt, Read & Co.,* 33 Conn. 446, 455. They are not within the limited jurisdiction of the Probate Court in allowing the account of a testamentary trustee. Parenthetically, it is pertinent to note that the allowance by a probate court of the account of a testamentary trustee does not constitute an adjudication of any matter not apparent on the face of the account nor bar a beneficiary from a subsequent action in the Superior Court to recover damages for a breach of trust by a trustee. *Phillips* v. *Moeller,* supra, 489; *Dettenborn* v. *Hartford-National Bank & Trust Co.,* supra, 393; 1 Locke & Kohn, Conn. Probate Practice §§ 151–54; 2 id. § 561.

It follows that these plaintiffs are not entitled in their pending appeal from the probate decree allowing the trustees' account to obtain from the Superior Court, when it is exercising only the limited

jurisdiction of a probate court, a judicial review of the management and business affairs of the corporation nor an adjudication as to the legality and propriety of the actions and votes of the defendants acting in their separate capacity as directors of that corporation. Accordingly, in the present action the plaintiffs are not entitled to discovery of evidence which can be pertinent only to such a review and adjudication. In view of the limited jurisdiction of the court in the original action, the discovery in this ancillary proceeding must be limited to matters pertinent only to the trust account, such as the allegations that the account is incomplete and that it fails to show whether all of the income of the trust is accounted for, how the net income of the trust was computed and what receipts and what disbursements were allocated to principal and what to income. For this limited purpose, an examination of the annual balance sheets and annual profit and loss statements of the corporation will suffice to disclose what the corporation records show was distributed to the trustees and therefore subject to account by them. Under the circumstances, it was within the court's discretion to order a disclosure of this information. On the other hand, an examination of the general ledger of the corporation is not pertinent to such a properly limited discovery, and the trial court should not have ordered its disclosure.

Since the accounts of the trustees covering the operation of the trust from its creation until April 30, 1957, had, after notice to the beneficiaries, including the plaintiffs, been duly accepted and allowed by the Probate Court without any appeal having been taken, the decrees approving those accounts were conclusive as to all relevant matters

embraced therein. General Statutes § 45-9; *Nikitiuk* v. *Pishtey,* 153 Conn. 545, 551, 219 A.2d 225; *Kochuk* v. *Labaha,* 126 Conn. 324, 329, 10 A.2d 755. Consequently, the trial court properly limited the disclosure to the period covered by the account which was the subject of the probate appeal.

Only one ruling on evidence requires discussion. The court, on proper objection, refused to permit one of the plaintiffs to testify concerning certain statements claimed to have been made to her by Ellen Carten, the now deceased life tenant of the trust. There was no error in the ruling. The declarant is not a party to the action nor is the action by or against her representatives so that a statement might be admissible as the declaration of a deceased person under § 52-172 of the General Statutes. There is no merit whatsoever to the plaintiffs' assertion that the alleged conversation is admissible under the res gestae rule. *Cascella* v. *Jay James Camera Shop, Inc.,* 147 Conn. 337, 342, 160 A.2d 899; *Perry* v. *Haritos,* 100 Conn. 476, 484, 124 A. 44.

There is error only in the extent of the discovery granted by the judgment; the judgment is set aside and the case is remanded with direction to render judgment as on file except that discovery by way of an examination of the general ledger of the D. J. Carten Sand and Gravel Company be denied.

In this opinion the other judges concurred.