## JOHN L. RICHMOND AND OTHERS' APPEAL FROM PROBATE.

Hartford Dist., March T., 1890. ANDREWS, C. J., CARPENTER, TORRANCE, FENN and THAYER, Js.

The mere existence of a confidential relation between a legatee and the testator would not of itself raise a presumption that the legatee had procured the making of the will, especially where there had not been the opportunity for secret communication at a time near to that of the making of the will.

But where a legacy is given to an attorney, confidential adviser, guardian, or other person sustaining a relation to the testator of special confidence; or where the person who prepares the will or procures its execution, not being a relative who would have taken as heir if there had been no will, derives a benefit from its provisions, the circumstances may be such that a presumption would naturally arise against the voluntary and intelligent action of the testator, and, in the absence of rebutting proof or explanation, would justify the jury in finding that undue influence had been used in procuring the will.

Where it is not clear that the point has been reached where the burden is thrown upon the proponents of the will of proving the absence of undue influence, the matter must go to the jury to be determined by their consideration of the evidence, and in this case it is the duty of the court to guide the jury to a careful verdict by a clear statement of the law as it affects the case.

A testatrix, whose property amounted to $27,000, who was eighty-three years of age, and had nephews and nieces, but no children, made her will in 1885, by which she gave about $5,000 in legacies to her nephews and nieces and the rest of her property to *C*, who had been for several years her confidential adviser and the manager of her property, and who at that time was an inmate of her house, where he remained until her death in 1887. On an appeal from the probate of the will, on the ground of mental incapacity to make it, and of undue influence used by *C* in procuring it, it was held that the burden of proof of the absence of undue influence rested upon the proponents of the will.

Richmond's Appeal from Probate.

And held that, in view of the character and extent of the confidential relation of *C* to the testatrix and the benefit received by him from the will, the jury would have been warranted in the inference, without any direct proof, that he took part in procuring the will from the testatrix.

And it was the duty of the court to state to the jury their right to draw such an inference.

All the facts attending or affecting the relation of *C* to the testatrix as her confidential agent, such as the amount, situation and character of the property with which he was entrusted at any time during his stewardship, the degree of knowledge which she possessed with regard to it, and his conduct in imparting to her or withholding from her information concerning it, were relevant and important as showing the character of the relation and his management of her affairs.

And upon this ground held that the court below erred in excluding an enquiry by the contestants of the will as to the value of the property of the testatrix five years before the will was executed.

Also that the court erred in not allowing the contestants to lay in the inventory and distribution of an estate made nineteen years before the will was executed, which estate had come indirectly to the testatrix, they proposing to follow up the evidence with proof that she had the same property six years before the will was made.

Also that the court erred in excluding several assessment lists made out and sworn to by *C* as her agent, during the time of his agency and not far from the time when the will was made.

A witness called by the contestants gave it as her opinion from her observation of the testratrix, that at the time the will was made her mental capacity was not greater than that of an average child of seven or eight years. Held that she had a right to illustrate her conception of her condition by such a comparison.

And held that the contestants were not entitled to an order from the court, upon their motion, that *C*, who was in court, should produce his books and papers, showing his account wtth the testatrix and her property.

With the existing statutory provisions in regard to discovery, (Acts of 1889, ch. 22,) and with the power to compel the attendance of witnesses and adverse parties for examination, and to call them when present, the matter of the granting or denying such a motion is best entrusted to the sound discretion of the court, to be determined by circumstances.

And held that counsel had no right to read to the jury from a standard work on wills in his argument.

The case of *State* v. *Hoyt*, 46 Conn. R., 330, commented on and distinguished.

The reading to the court or jury of scientific books recognized by experts as standard authority, where necessary for an accurate apprehension of any relevant matter, may be allowed or refused by the court in the exercise of its judicial discretion.

[Argued March 12th—decided April 15th, 1890.]

APPEAL from the probate of the will of Eunice R. Heap; taken to the Superior Court in Windham County, and tried to the jury before *Prentice, J.* Verdict for the appellees, and appeal by the appellants for errors in the rulings and charge of the court. The case is fully stated in the opinion.

*C. H. Briscoe* and *J. P. Andrews,* for the appellants.

1. The court erred in excluding the question as to the property of the testatrix in 1878; also in excluding evidence as to the amount of the Lord estate, which was accompanied by a promise to show that the testatrix had the same property in 1879; also in ruling out the three assessment lists returned by Cushman as her agent. All this evidence was admissible to show that he was her fiduciary agent and to what extent; the temptation he was under; the degree of duty to disclose to her the amount of her estate; losses, if any; what he was doing with the estate; whether he accounted in any manner, etc. It was admissible as one element to show he was carrying on a line of deceit for years, with the intent to finally obtain the entire estate. Some comprehension of the amount of her estate ought to enter into Mrs. Heap's mind to enable her to make a will. If she believed she was disposing of only $12,000, when she was disposing of a million, who would not say that a fiduciary agent, who caused such a belief, and a will to be made in his favor, cutting off near relatives, was guilty of a gross fraud? "Fraud in obtaining a will may be shown by indirect and circumstantial evidence, and any circumstances however slight, if not wholly irrelevant to the issue of fraud, may be admitted." Abbott's Trial Ev., 123, and cases cited. See also Wharton on Ev., § 21; *Barnum* v. *Barnum,* 9 Conn., 242; *Belden* v. *Lamb,* 17 id., 441, 450; *Moppin* v. *Ætna Axle & Spring Co.,* 41 id., 27, 34; *McLaughlin* v. *McDevitt,* 63 N. York, 220.

2. The court erred in ruling out Mrs. McEvoy's answer, in which she compared the mental capacity of the testatrix to that of a child of seven or eight years. A witness should be allowed to use his own language and forms of expression.

A court has no power to select language for him. The court thinks that the witness afterwards expressed her opinion fully, but this was a matter for the jury.

3. The court erred in refusing to order the production of the books containing Cushman's account with Mrs. Heap's estate. They were the books of the estate. Cushman had their custody. They were legitimate evidence in the case. He and his counsel absolutely refused to produce them, Cushman himself sitting in court. It was the duty of the court to order their production. The effect of the judge's refusal was to enable Cushman to keep off the stand himself, and thus to keep important evidence from the jury. Lawson on Presumptive Ev., 120, 121 ; *Clifton* v. *U. States*, 4 How., 242.

4. The court erred in refusing to allow counsel for the appellants to read the paragraphs from Redfield on Wills. It was sought to use in argument and by way of explanation the concise and forcible expressions of an eminent counsellor, instead of the language of the appellants' counsel. 24 Alb. Law Jour., 266. " Reason is neither more nor less than reason because it happens to be read from a book." *Cory* v. *Silcox*, 6 Ind., 39. BEASLY, C. J., in *Allaire* v. *Allaire*, 39 N. Jer. Law, 114, said :—" Plainly counsel, in his address to the jury, can, for the purpose of presenting his views of the law of his case, call to his aid and quote the language delivered from the bench." See also *Legg* v. *Drake*, 1 Ohio St., 286 ; *Union Life Ins. Co.* v. *Cheever*, 36 id., 201.

5. The court erred in its charge with reference to testamentary capacity. One error was in stating, and impressing the jury with the idea, that a great deal of the testimony offered on this point by the appellants was of no consequence. When the jury were told that a sound and disposing mind did not mean a strong intellect, or capacity to do business ; that one's capacity might be very inadequate to manage business matters ; that physical weakness or disease, old age, eccentricities, blunted perceptions, weakening judgment and a failing mind or memory were not inconsistent with testamentary capacity, and no more, the court withdrew at a

stroke from the attention of the jury a great mass of testimony that did tend, with considerable force, to prove incapacity. *Drake's Appeal from Probate*, 45 Conn., 9, 21 ; *Baxter* v. *Abbott*, 7 Gray, 71, 79.

6. The court erred in its charge with regard to the effect of Mrs. Heap's ignorance of the amount of her property. If she did not in fact understand the nature, condition and amount of her property, she was in no position to make an intelligent disposition of it.   But the court told the jury that her ignorance, understanding or belief as to the amount of property she was disposing of was of no consequence ; that the law does not require knowledge of the condition or amount of one's property, but merely mental ability to know. In *Yardley* v. *Cuthbertson*, 108 Penn. St., 461, the court say :—" The attempt was to substitute a general knowledge of the meaning and effect of the codicil, for that precise and definite knowledge of the condition and amount of the estate and the proportion of it which the confidential beneficiary was to take, which the courts have said many times over that the testator must have in order that the testament may stand."   See also *Cuthbertson's Appeal*, 97 Penn. St., 163, 172.

7. One of the most important instructions requested, in view of the refusal of Cushman to produce his books or to give any explanation of this will in his favor, was that when a fiduciary relation exists between the principal beneficiary and the testatrix, *it is incumbent upon the beneficiary* to show that his position was not used to improperly influence or control the testatrix in the disposition of her property.   We supposed this rule of law was too well settled to be questioned. It is based upon grounds of public policy, and has been applied over and over again in cases like the one at bar.   But the court disregarded the request, and instructed the jury that " this rule applies only when the beneficiary or the confidential person drafts the will or takes part in procuring from the testator its terms and provisions for some one else to reduce to writing."   This was manifest error.   The rule rests on no such narrow foundation.   It is well stated in Judge

Woerner's recent work on the American Law of Adminis-
tration, Vol. 1, p. 49. He says :—" The rule that undue in-
fluence may never be presumed, but must be proved by the
person who alleges it, is subject to an exception in those
cases in which a legacy is given by a testator to his attorney,
confidential adviser, guardian, or other person sustaining
toward him any fiduciary relation. Proof of the existence
of such relation raises the presumption of undue influence,
which is fatal to the bequest unless rebutted by proof of full
deliberation and spontaneity on the part of the testator and
good faith on the part of the legatee." See also *St. Leger's
App. from Probate*, 34 Conn., 442 ; *Dale's App. from Pro-
bate*, 57 id., 127 ; *Wilson* v. *Moran*, 3 Bradf., 180 ; *In re
Welsh*, 1 Redf., 238 ; *Boyd* v. *Boyd*, 66 Penn. St., 283 ;
*Wilson's Appeal*, 99 id., 545 ; *Wilson* v. *Mitchell*, 101 id.,
495 ; *Dale* v. *Dale*, 38 N. Jer. Eq., 274 ; *Bridwell* v. *Swank*,
84 Misso., 467 ; *Gay* v. *Gillan*, 92 id., 250 ; *Moore* v. *Spier*,
80 Ala., 133 ; *McLaughlin* v. *McDevitt*, 63 N. York, 217 ;
*Breed* v. *Pratt*, 18 Pick., 115 ; *Meek* v. *Perry*, 36 Miss., 190 ;
*Watterson* v. *Watterson*, 1 Head, 1 ; *Morris* v. *Stokes*, 21 Geo.,
552 ; *Riddell* v. *Johnson*, 26 Gratt., 152 ; *Wright* v. *Howe*, 7
Jones, 412 ; *Potter* v. *Chadsey*, 16 Abb. Pr., 146 ; *Allore* v.
*Jewell*, 94 U. S. R., 506. The charge utterly failed to give
any significance to the fiduciary relation. The court treated
that relation like any other fact in the case and told the jury
to consider it with all the other facts. The court ignored
the well established rule of law that a bequest of substan-
tially all one's property to a fiduciary person was a fact of
great weight in the case—a suspicious circumstance. This
was prejudicial enough. But the court further gave the
jury expressly to understand that Cushman was at liberty
to use " moderate and reasonable solicitation, entreaty and
persuasion." Also that he might freely and reasonably lead
this old lady, if he did not deceive her. Probably the court
was speaking in the abstract. He could not have intended
to apply this rule to the relation existing between the par-
ties in this case. But the jury no doubt made a concrete
and personal application of it. Is it so that the law permits

a guardian, conservator, trustee or attorney, to use moderate solicitation and entreaty to secure a gift from his ward, beneficiary or client?

*C. E. Searls* and *G. A. Conant*, for the appellees.

1. The question as to the value of Mrs. Heap's property in 1878 or 1880, was properly excluded because it was irrelevant. Mr. Cushman was admitted on the trial to have been her trusted friend and confidential agent. The value of her property in 1878, or at·any other time, would not explain or qualify any relationship. The answer, if permitted, would have been favorable to the appellants only in case it showed that Mrs. Heap's property was considerable. Hence its exclusion did no injury to them; for the finding states that the "general tenor of all the evidence was that its amount was quite large."

2. The testimony of Mrs. McEvoy that "I don't think she had any more memory than a child of seven or eight years," was properly struck out. The mind and memory of an average child of eight years is not a standard. An average child does not exist, and never did. Who knows or ever did know the mental dimensions of a child, average or otherwise? They are as incapable of measurement as Mrs. Heap's mind and memory. Her memory might just as well be compared to itself as to such a memory or any other memory. Comparing memory with memory is a very different thing from comparing a fence with a fence. The qualities of the latter are known, while those of the former are in dispute and matter of speculation. Testimony by comparison is not permitted to go beyond all bounds of reason. The court's discretion was soundly exercised in the premises. *Isbell* v. *N. York & N. Haven R. R. Co.*, 25 Conn., 562; *Harris* v. *Rosenberg*, 43 id., 231.

3. The assessment lists of Mrs. Heap's property for the years 1883, 1885, and 1886, made out and sworn to by Mr. Cushman, as her agent, were properly excluded. They were totally irrelevant. They were isolated, independent pieces of evidence, having no possible connection with the

issues. They were offered as the foundation for an infer-
ence to be drawn by the jury that Mr. Cushman had mis-
represented to Mrs. Heap the amount of her property.
They furnished no proper foundation for such an inference.
They could be of no use to the appellants unless they
showed less property than she really had. What or how
much they showed as to her property does not appear from
the record.

4. The court rightly refused to order Mr. Cushman to
deliver his books of account, as Mrs. Heap's agent, into the
hands of the appellants. They were immaterial. The
practice, whether in equity or under the statute of 1889,
does not admit of summary orders for discovery upon oral
motion made in the midst of a trial. *Marion* v. *Faxon*, 20
Conn., 488, 494.

5. The inventory and distribution of the Lord estate
were clearly irrelevant. This evidence was ruled out with
an intimation on the part of the court that evidence might
be received as to the amount of property which Mrs. Heap
had at later dates. They could be of no use to the appel-
lants unless they showed that the amount of Mrs. Heap's
property was considerable. But the court says in the find-
ing that the " general tenor of all the evidence was that its
amount was quite large." The jury fully understood and
believed that the amount of Mrs. Heap's estate, during Mr.
Cushman's management, approximated $30,000. Hence the
appellants have not been prejudiced by the exclusion of this
evidence.

6. The court was right in declining to permit counsel to
read extracts from Redfield on Wills to the jury. *Baldwin's
Appeal from Probate*, 44 Conn., 37.

7. The court did not err in charging the jury that " a
moderate and reasonable solicitation, entreaty and persua-
sion, though yielded to, if done intelligently, without con-
straint and from a sense of duty, would not invalidate a
will in other respects valid." The complaint is that the
court did not charge, in this connection, that what might be
proper solicitation and persuasion on the part of a child

towards a parent would not be proper or right on the part of a confidential business agent in full and exclusive control of a testator's property. The portion of the charge above quoted and criticised by the appellants, was delivered by the court with every needful and reasonable precaution, as fully appears from the context. The following quotation shows its connection with the rest of the charge:—" Undue influence may take the form of force or fraud. Fraud in any form constitutes improper influence, and when the provisions of the will are procured by fraud, the will is vitiated. And by fraud, gentlemen, is embraced all manner of trickery, cunning, artifice, concealment, dissembling, falsehood, or other unfair means used to circumvent, cheat or deceive. A moderate and reasonable solicitation, entreaty, and persuasion, though yielded to, if done intelligently, without constraint, and from a sense of duty, would not vitiate a will in other respects valid. Efforts to secure another's esteem or regard, or to win his good opinion or friendship by ordinary means, the same being in all respects fair, honorable, and honest, are not improper. Acts of kindness, good offices and consideration, and care for the wants or wishes of the testator, manifestations of regard or affection, are not unlawful. These things, however, may not be used as a cover for fraud ; but of themselves are not improper, and results flowing naturally and freely from them must stand. In a word, a testator may be freely and reasonably led or persuaded, but not driven, tricked, deceived or defrauded. To constitute undue influence, some act or acts must have been done to cause the testator to dispose of his property contrary to his true desire. If the will expresses the real desire of the testator, as it would have been if left to his own discretion, judgment and action, it should stand." The facts, that Mr. Cushman had been the friend, not of Mrs. Heap alone, but of Mr. Heap, as well as her business agent, and that she had no relatives nearer than nieces and nephews, illustrate the propriety of the rule here laid down. The language complained of is the identical language addressed by Judge FENN to the jury, and

sustained by this court in *Dale's Appeal from Probate*, 57 Conn., 133. See also *Drake's Appeal from Probate*, 45 Conn., 12. In this connection the appellants complain specially of this sentence in that part of the charge above quoted:—" In a word a testator may be freely and reasonably led or persuaded, but not driven, tricked, deceived or defrauded." It states the law correctly. It elucidates the former statement and simplifies it to the jury; and in its own light, to say nothing of that thrown upon it by the whole charge, must have been received by the jury without prejudice to the appellants.

8. The court did not err in charging the jury that, while the burden of proof as to the will being executed freely and without undue influence "becomes shifted whenever the person who drafts the will or participates in procuring its provisions from the testator, also occupies a relation of special confidence toward the testator, and at the same time is made specially benefited by the terms of the will," yet that "this rule applies only when the beneficiary or the confidential person drafts the will, or takes part in procuring from the testator its terms and provisions for some one else to reduce to writing. It does not apply where the confidential relation only exists between the testator and the beneficiary. There must be some participation in the procurement of the will." Here Mr. Cushman did not draw the will, nor can he be said to have participated in procuring it to be drawn. It is true that he applied to a lawyer to draw it, and to one who had previously done business for him, but he did this at Mrs. Heap's request, and was not present when the will was drawn, and had made no suggestions as to how it should be drawn. If the court was in error in its charge at this point it could therefore have done the appellants no harm. But particular complaint is made of what the court added, which is as follows:—" It has been suggested on the trial that this same rule as to the shifting of the burden of proof extends so far as to provide that the burden becomes shifted whenever one who is the usual attorney of the beneficiary and confidential person, and who is procured for the purpose by

or upon his suggestion, receives from the testator, in the absence of the beneficiary, the provisions of the will and drafts it. It is intimated in substance that this state of facts alone raises the presumption of improper influence, which of itself overcomes the presumption in favor of the will, and which those appearing for the will are bound to disprove. I do not so understand the law, and do not so instruct you." It is to be observed that these remarks of the court are immediately supplemented by the following : " Such facts you are indeed to consider, as you should consider all other facts, to determine whether the will was fairly or unfairly obtained. If the circumstances surrounding the transaction were suspicious or questionable, it would be your duty to regard it most unfavorably towards those participating or benefiting. If, on the other hand, the circumstances attending the drafting of the will do not disclose any unfairness or impropriety, I know of no law which taints the transaction with the presumption of wrong or fraud, and which shifts the burden of proof." This part of the charge presents no error. It is the settled law of this state, that a mere relationship does not shift or discharge the burden of proof which, by well established rules of evidence, rests upon the opponents of a will. *St. Leger's Appeal from Probate*, 34 Conn., 434, 450 ; *Dale's Appeal from Probate*, 57 id., 127, 130 ; 1 Jarman on Wills, (Am. ed.) 133, note ; 1 Redfield on Wills, 537 ; Abbott's Trial Evidence, § 67 ; *Barry* v. *Butlin*, 1 Curteis, 637 ; *Boyse* v. *Rossborough*, 6 House of Lords Cas., 49 ; *Fulton* v. *Andrews*, L. R., 7 H. L., 448, 472 ; *Parfit* v. *Lawless*, L. R., 2 Prob. & Div., 462 ; *Ashwell* v. *Lomi*, id., 477, 490; *Bleeker* v. *Lynch*, 1 Bradf., 458, 472 ; *Monroe* v. *Barclay*, 17 Ohio St., 302, 316 ; *Lee* v. *Lee*, 71 N. Car., 139, 144.

9. The court did not err in charging the jury that, while it was Mr. Cushman's duty " at all times when desired or requested to give to her full and accurate information as to the amount and condition of her finances, to conceal nothing from her, and to deceive her in no way as to her property," yet that he " was under no obligation to force knowledge upon her if she had no wish for it ; he was simply

bound to treat her fairly, frankly, and honestly in all respects." There surely can be no obligation on the part of an agent who is managing another's property to do more than to give full information with regard to it when requested.

10. The court did not err in charging that "it matters not whether or not she had correct information of her estate unless her misinformation was caused by fraud, deception, or improper conduct or dealing with her. The mere fact of ignorance is of no importance as related to testamentary capacity, because the law requires mental ability to know, not knowledge in fact. As related to undue influence, it is of no importance unless the ignorance was induced and brought about by some manner of improper influence." The question submitted to the court at this point by the appellants is, whether, in addition to *ability* to know certain facts, it is essential that the testator should actually know the facts in order to be qualified to make a will. The charge of the court on this question is in accordance with all the leading authorities. *Comstock* v. *Hadlyme*, 8 Conn., 264 ; *Kinne* v. *Kinne*, 9 id., 105 ; *Dunham's Appeal from Probate*, 27 id., 203 ; *Harrison* v. *Rowan*, 3 Wash. C. C., 585 ; *Stevens* v. *Vancleve*, 4 id., 267 ; *Hathorn* v. *King*, 8 Mass., 371 ; *Lowe* v. *Williamson*, 1 Green's Ch., 85 ; *Bundy* v. *McKnight*, 48 Ind., 511 ; *Barnhardt* v. *Smith*, 86 N. Car., 484. The conclusion from these decisions is irresistible, that capability to know is the true test of testamentary capacity. An ability to know, comprehend or understand, as stated by the court to the jury in this case, is a more exacting test of testamentary powers, and therefore more favorable to the appellants, than a knowledge or memory of a few particulars. The ability to know includes the actual knowledge and much more. It describes a mental activity sufficient to raise a presumption that the deceased knows all her circumstances— not the amount of her property alone. To practical men a rule that a testator must know just how much property he has, the names of innumerable nephews and nieces, and their circumstances in life, would be an unreasonable rule. A testa-

tor might not know these things in fact, and yet possess a mental strength and comprehension, a retentiveness of memory, rare in the extreme.

FENN, J.  On the trial of this appeal to the jury, the appellees having offered the will and codicil, and having introduced the witnesses thereto upon the question of their execution and the capacity of the testatrix, rested.  The appellants then presented evidence, claimed as tending to establish the want of such capacity, and undue influence exercised by one Cushman, the residuary legatee, to which the appellees replied with counter evidence.

Concerning the relations which existed between the testatrix and Cushman, the finding is as follows:—The testimony of the parties was in substantial agreement in establishing the following facts.  In or about 1878, Mr. Heap, husband of the testatrix, died.  Mrs. Heap was then left alone without near relatives in Willimantic.  She was, and for many years had been, the owner of property, a part of which consisted of real estate in Willimantic, and on a part of which she resided.  Mr. Cushman had been a friend of Mr. Heap during his last years, and soon after the latter's death became managing agent of Mrs. Heap's property.  A power of attorney was executed by her to him for the purpose, and all her property then passed into his management.  From this time until Mrs. Heap's death he remained her confidential friend and business adviser, and continued in the management of her property, she placing great trust in and reliance upon him.  During the later years of Mrs. Heap's life Cushman became an inmate of her house, and there remained, caring for her and her property, until her decease.  She died June 4th, 1887, aged eighty-five years, leaving as her nearest kin twenty-eight nephews and nieces, among whom are the appellants.

In reference to the circumstances attending the execution of the will and codicil, the finding states that the evidence was practically confined to the testimony of the attorney who drafted them, which it states as follows :—

" A few days prior to the execution of the will, Cushman, whose employment was in Hartford, and whom he well knew, came to him, and requested him to go to Willimantic and draft a will for an old lady there; naming the testatrix. During the conversation Cushman stated that she had spoken of her desire to make her will, and had told him in general what she purposed to do, and asked him who a suitable man to draft it would be. Cushman knew the witness, and had upon several occasions employed or consulted him. The witness testified that he presumed that he had been Cushman's usual attorney. Cushman told the witness that he had suggested him as a proper man to draft the will, and that Mrs. Heap had requested him, Cushman, to obtain the witness for that purpose. Cushman told the witness that Mrs. Heap had said that she proposed to remember certain of her relations, and to make him a handsome legacy. During the conversation something was said about the amount of her estate, and witness understood Cushman to reply to an inquiry from him, that it was about $12,000; but the witness was unwilling to say that the expression was not used of the amount of personal estate in Cushman's hands, although the witness did not at the time so understand it. Upon a day set the witness went to Willimantic, and was introduced to Mrs. Heap by Cushman. Cushman immediately left the witness and Mrs. Heap alone together. They discussed at length and alone the provisions of her will, Mrs. Heap giving him data as to her wishes, and explaining at length her reasons for much of her action. The witness took memoranda as she stated what she desired. He then drafted the document, and read it carefully over to her. She expressed her satisfaction. Thus far no one had been present. At this point Cushman was summoned and asked to procure two witnesses. He went out and obtained them and soon returned with them. The document was thereupon executed, Cushman being present. The witness stated that the instrument was Mrs. Heap's will, but did not at any time state anything as to its provisions. Neither Cushman nor any other person was informed of the contents of

the will until after its execution and the witness's depart-
ure.  Memoranda for the codicil, together with the will,
were brought to the witness in Hartford by Cushman, for
him to draft the codicil, which he did; returning it and the
will to Cushman.  The witnesses to the codicil testified that
it was executed in Cushman's presence, and that they were
requested by him to act as witnesses.  The witness charged
his services on book to Mrs. Heap.  Payment of the bill
was afterwards made by Cushman."

The estate inventoried $27,689.62, of which $12,000 was
real, and the balance personal estate.  By the provisions of
the will the sum of two hundred dollars is given to each of
twenty-five nephews and nieces.  To one of these nephews
the additional sum of one hundred dollars a year is given,
during the life and conditioned on the support of his father,
the brother of the testatrix, who died shortly after.  A gold
watch is also bequeathed to one Kate Clark, and the will
then concludes as follows :—"All the rest of my property
of every kind I give absolutely to my friend E. McCall
Cushman, of Hartford, Conn.  I do this as only a just re-
ward for his faithful care of all my affairs for many years ;
for his constant friendship to me personally ; and for my
great esteem for him and confidence that he will make the
wisest and best use of the property given him."  In the will
it is provided that, if any of the nephews and nieces named
as legatees shall have died, leaving children, such children
are to take the legacy.  By the codicil this provision, and
the bequest of the watch, are revoked.  The will is dated
October 1st, 1885, and the codicil March 16th, 1886.

The appellant's first witness was John L. Richmond, who,
having testified as to Cushman's management of Mrs. Heap's
affairs and the power of attorney therefor having been laid
in, was asked upon direct examination—" Do you know the
value of her property in 1878 or 1880 ?"  Upon objection
being made the counsel for the appellants claimed it to show
what property Cushman had control of, adding—" The ob-
ject of this inquiry is to show all the relations that existed
between this man and this woman, from the time he came

there and took hold of the property; whether she was a woman of large or small means." To a question by the court the witness said he knew nothing of the matter except from a conversation with Mrs. Heap. The court ruled that at this stage, and until further reason for its relevancy appeared, he should exclude the question.

During the trial the appellants offered in evidence three assessment lists made out and sworn to by Mr. Cushman, as the agent of Mrs. Heap, of her taxable property for the years 1883, 1885, and 1886. This testimony was excluded.

The appellants further offered to lay in the inventory and distribution of the Lord estate, as tending to show what the amount of property was that came to Mrs. Heap in 1866, either directly or indirectly. On objection it was stated that it was proposed to follow it up with proof that she had the same property in 1879, and it was claimed as tending to show the amount of her property to have been $30,000 or upwards. The court declined to receive the evidence, but stated that if counsel had evidence as to her property at later dates, he would consider and rule upon the question when such evidence should be offered.

We cannot well understand why all the evidence so presented should not have been received. It was incumbent upon the appellants to show the existence of a confidential relation between Cushman and the testatrix. To this extent, undoubtedly, the burden was upon them ; and they had assumed and were endeavoring to support it. The court, indeed, as we shall hereafter see, went further, and held that proof of the existence of such relation did not shift or raise the appellants' burden, upon the issue of undue influence. Clearly the facts and circumstances surrounding the relations between Cushman and the testatrix had a direct, positive and important bearing upon this question, and the amount, situation and character of the property with which Cushman was entrusted, during any and all portions of his stewardship, as well as the degree of knowledge which the testatrix possessed in regard to the same, and the conduct of Cushman in imparting information upon the

subject to her or in withholding it from her, were relevant and important. Evidence upon these points would have disclosed the degree of confidence reposed. It was one of the elements by which it would be made to appear how far the provisions of the will in his favor were reasonable, and in fact, to use its own language, " only a just reward for his faithful care." Without this element, the remaining factors might be insufficient for the solution of the problem. We think the evidence was admissible and its exclusion erroneous.

During the trial a witness for the appellants, having undertaken to compare the mind and memory of the testatrix, as regarded the amount of property she was worth and the disposition she wished to make of it, with that of an average child of seven or eight years, upon objection and motion made to strike out that portion of the answer, the court granted the motion, saying that the witness might state her opinion of the strength of Mrs. Heap's memory, or of the extent of her knowledge of her property, or the like, but not comparatively; which the witness did. Although we should have hardly been disposed to grant a new trial on this ground alone, since it does not appear very probable that any injury resulted to the appellants in consequence of this ruling, we nevertheless think that the witness should have been allowed to make the comparison. It may be correct, as the appellees claim, that there is no such thing as an average child, and that the mind and memory of a child is incapable of perfect measurement. This is true of almost any standard. It would be true of the standard which the law prescribes for the determination of reasonable care and prudence. It is nevertheless true that such a comparison carries with it, to an ordinary apprehension, a greater approximation to certainty than any merely general and abstract statement. The words " childish," and " second childhood " are used in common parlance, and so used because they fittingly and adequately express a clearly defined idea. That eminent jurist, Judge SEYMOUR, in a charge to a jury, reported in the appendix to 39 Conn. R., page 591,

says that the main difficulty in questions of this sort arises from the want of a definite measure of mental capacity; and then adds :—" I can give you no precise rule, but I think it clear that, if the prisoner's perception of consequences and effects was only such as is common to children of tender years, he ought to be acquitted."

It is found that " before the appellants closed their case they requested the counsel for the appellees to produce and deliver to them for their examination all books kept by Mr. Cushman, and containing accounts of his stewardship with Mrs. Heap as her agent. The counsel for the appellees declined to do so. The counsel for the appellants thereupon asked the court to order such production. The court declined to do so. Mr. Cushman was at the time, and throughout the trial, in court."

We find no error in this. With the existing statutory provisions in regard to discovery, (Acts of 1889, chap. 22), and with the power of parties to compel the attendance of witnesses and adverse parties for examination, and to call them, when, as in this case, present, the exercise of the extraordinary power invoked is best entrusted to the sound discretion of the trial court, to be granted or withheld as circumstances seem to warrant; and there we prefer to leave it.

During the argument one of the appellants' counsel claimed the right to read, as a part of his argument to the jury, paragraph 38, section 1, page 509, and paragraph 38, section 37, page 526, of Redfield on Wills; but, upon objection being made, the court declined to permit him to do so. This ruling is so clearly in accordance with the decision of this court in *Baldwin's Appeal from Probate*, 44 Conn., 37, that it seems at first thought strange that the question should again be raised. We are however aware that the later decision in *State* v. *Hoyt*, 46 Conn., 330, has been regarded by some members of the profession as somewhat modifying the doctrine of the earlier case; especially since, although the former was a civil and the latter a criminal case, yet, as the subject matter of the proposed reading in

the latter belonged exclusively to the realm of fact and not of law, it is perhaps difficult to see how, on principle and in reason, a distinction can be drawn between the two classes of cases ; and this has doubtless led to some question. And as the rule upon this subject is one calling for very frequent application in the trial of causes, it seems most important that it should be definitely and positively stated, and clearly and fully understood. We will therefore say that the ruling in *State* v. *Hoyt* must be regarded as confined exclusively to cases where the plea of insanity is interposed in behalf of persons indicted or informed against ; the allowance in such cases forming an exception, based upon a practice which the majority of the court in that case felt had so hardened into a rule that they were not at liberty to abrogate it ; that in all other cases the decision in *Baldwin's Appeal from Probate* fully applies ; and that facts relevant to the cause cannot, except within the limits of certain defined and recognized exceptions, be proved by reading from published books, or given to the jury except under the sanction of an oath and the test of cross-examination ; while the reading to the court or jury of such books of science, art, or purely technical knowledge, necessary for an accurate apprehension of any relevant matter, as have been shown in evidence to be recognized by experts as standard authority, and by such proof in effect incorporated in and made part of the testimony of such witnesses, may be allowed or refused by the trial court in the exercise of its judicial discretion. To this extent the allowance of such reading would seem to fall within the reason of the decision in *Tompkins* v. *West*, 56 Conn., 478.

The appellants filed twenty written requests to charge. These requests were only partially complied with. Some of those refused were clearly incorrect, while others appear to possess merit. For the sake of greater brevity we will however confine our further consideration to two points in the charge as actually made. On the question of testamentary capacity the court, in addition to declaring the rule correctly as this court has established it, that the law merely

requires that the testator should be possessed of sufficient intelligence and memory to fairly and rationally know and comprehend the effect of what he is doing and the nature and condition of his property, to understand who are or should be the natural objects of his bounty, and his relations to them, the manner in which he wishes to distribute it among or withhold it from them, and the scope and bearing of the provisions of the will he is making, further said:—"Mere physical weakness or disease, old age, eccentricities, blunted perceptions, weakening judgment, failing memory or mind, are not necessarily inconsistent with testamentary capacity. One's memory may be failing and yet his mind not be unsound. One's mental powers may be weakening, and still sufficient testamentary capacity remain to make a will."

This is also undoubtedly true; but such facts are admissible in evidence upon the question of capacity, and it was mainly by the proof of their existence that the appellants sought to establish the want of such capacity. The court therefore in charging as it did, and in entirely failing to make reference in any portion of the charge to the significance of such facts as evidence, would seem rather, in effect, to have withdrawn them from under the eyes of the jury, and from their consideration of them as such evidence, and thereby may, and we fear must, have misled the jury, to the injury of the appellants.

Upon the question of undue influence the court charged the jury as follows:—" If a paper is executed with the requisite formalities of a will, and the person signing it is shown to have sufficient capacity to make a will, the presumption is that it was executed freely and without undue or improper influence until the contrary appears, and the burden of proof is, therefore, upon the party alleging undue influence. That burden, however, becomes shifted whenever the person who drafts the will or participates in procuring its provisions from the testator, also occupies a relation of special confidence toward the testator, and at the same time is made specially benefited by the terms of the will. The reason of this rule is, that his confidential relations may

have enabled him to exercise a controlling influence over the testator in his own behalf in procuring the provisions of the will from the testator. The burden is therefore placed upon him to show, by a fair preponderance of proof, the fairness of his own conduct. This rule applies only when the beneficiary or the confidential person drafts the will, or takes part in procuring from the testator its terms and provisions for some one else to reduce to writing. It does not apply where the confidential relation only exists between the testator and the beneficiary. There must be some participation in the procurement of the will."

We think the jury would have been fully warranted, from the evidence disclosed by the finding of the nature, character and extent of the confidential relation between the beneficiary and the testatrix, in the inference and presumption that such beneficiary did take part in procuring from the testatrix the terms and provisions of the will, without direct and positive proof of the fact, and that their right to draw such inference should have been stated to them by the court. The mere existence of a confidential relation would not, indeed, in all cases, and necessarily raise such presumption, especially when it appeared that the opportunity of familiar and secret communication and intercourse between the testator and the beneficiary, at a time proximate to the execution of the will, was wanting; but whenever a legacy is given to an attorney, confidential adviser, guardian, or other person sustaining a relation of special confidence to a testator, or whenever the individual who prepares the instrument or conducts its execution, not being a relative who would in the absence of a will be an heir, derives a benefit from its provisions, in either instance the surrounding circumstances may be such that a presumption, similar in character in each case, would naturally arise against the volition or knowledge of the testator; and if, in this regard, the rules of law are to correspond with those of reason, such presumption, in the absence of rebutting proof or explanation, should justify the finding of a jury that undue influence existed. When evidence therefore,

either of actual participation in the procurement of a will or of the existence of a confidential relation is offered, the ordinary presumption that the instrument was executed freely and without undue or improper influence, may or may not, in fact, have so given place or been overcome in the minds of the jury, that evidence in rebuttal or explanation would be required to dispel the inference of undue influence. This can only be determined by the verdict. The proponents, having assumed the responsibility of deciding whether to offer such evidence, and the trial being closed, the jury should be guided to a careful and well grounded verdict by a charge from the court in which the principles of law are fitted and adapted to the evidence adduced.

The doctrine above stated is in accordance with the former decisions of this court. *St. Leger's Appeal from Probate*, 34 Conn., 434, 450; *Drake's Appeal from Probate*, 45 Conn., 9; and the language of Judge PARDEE, delivering the opinion of the court in *Dale's Appeal from Probate*, 57 Conn., 143.

There is error in the judgment appealed from, and a new trial is ordered.

In this opinion the other judges concurred.