LOLA MAYE HOBBES ET AL. APPEAL FROM PROBATE.

Third Judicial District, Bridgeport, October Term, 1900.
ANDREWS, C. J., TORRANCE, BALDWIN, HAMERSLEY and HALL, Js.

It is within the discretion of the trial court in charging a jury to caution
    them against laying too great stress upon a single, isolated fact,
    provided their right to determine its weight and importance in
    connection with all the other facts and circumstances in the case,
    is clearly stated in the instructions given.
The charge in the present case reviewed and *held* not to be open to the
    objection that it withdrew from the attention and consideration of
    the jury certain evidence tending to prove undue influence in pro-
    curing a will.

Argued November 8th—decided December 18th, 1900.

APPEAL from an order and decree of the Court of Probate
for the district of Bridgeport, approving and admitting to
probate a certain instrument in writing as the last will and
testament of Delia E. Hobbes, deceased, taken to the Supe-
rior Court in Fairfield County and tried to the jury before
*Roraback, J.;* verdict and judgment sustaining the will,
and appeal by the contestants for alleged errors in the charge
of the court. *No error.*

The appellant George E. Hobbes was the divorced husband
of Delia E. Hobbes, the testatrix, and the other appellants
are his two minor children by a later and deceased wife.

The appellees are Mary A. Cook, sister of the testatrix,
and James Cook the husband of Mary, Ellen Doran, the
mother, and Albert Doran, the nephew, of the testatrix.

The testatrix died September 19th, 1899, after an illness of
several months. On September 8th, 1889, she executed a
will by which she left $500 to her mother, Ellen Doran, de-
vised her real estate to the two children of George E. Hobbes,
and gave the residue of her estate to said Hobbes, whom she
appointed executor without bonds. On the 12th of the same
month she executed another will, by which she gave $500 to
George E. Hobbes in trust for his two children, directed her

executor to sell all her real estate and hold the proceeds for her mother, Ellen Doran, during her life, and then to pay two thirds of the same to her sister, Mary A. Cook, and one third to her nephew, Albert Doran, and named her brother-in-law, James Cook, as her executor. This will is the one in contest.

The appellants contest the will because: (1) it was not legally executed; (2) the testatrix did not possess testamentary capacity; and (3) it was obtained by undue influence exercised upon the testatrix by Ellen Doran, Mary Cook, Mrs. Charles Patterson, Mrs. William H. Lewis and Emily Burgess.

Mrs. Patterson and Mrs. Lewis were witnesses to the contested will.

Upon the trial the appellants offered evidence to prove, as bearing on the question of undue influence, and claimed to have proved that upon September 10th, 1899, and until her death, the testatrix was in the last stages of Bright's disease, which rendered her mind stupid, feeble and incapable of resisting pressure of any kind, so that she had not courage to resist importunity or threats, and for the sake of peace and escaping distress of mind would yield her judgment and wishes to moral command or pressure; that her mother, Ellen Doran, and her only sister, Mary Cook, were her nurses, and she was dependent on them for her care and comfort, and greatly wished their society; that on September 7th she was told by her physician she had not long to live, and should attend at once to any necessary business; that the next day she sent for an attorney, and in the presence of her mother dictated and executed her will in favor of George E. Hobbes; that on September 10th her mother thought her dying and sent for her minister, who found her apparently under great distress of mind, the cause of which she did not explain; that just before the minister was sent for Mary Cook went to her bedside and told her in a very angry manner that she was through with her, that she had willed her property to Hobbes, and that the Hobbes could take care of her; that the testatrix was greatly affected by this and began to cry, and on the morning of September 11th sent for her sister, and

was asking for her all day the 12th, before the will was drawn; that Mrs. Cook informed the messenger and told others that she would not go to her sister, saying: "She has made her will and now let her stand by it;" that Mrs. Cook did not return to her sister until she learned that an attorney had been sent for to draw a new will; that she reached her sister shortly before the will was drawn, resumed friendly relations with her, and that the testatrix said, "Why did you stay away so for? There may be a surprise for you;" that this conduct of Mrs. Cook was designed to and did operate on the testatrix so that her judgment was overcome, and under the pressure thereby exercised she was unduly influenced to make the will of September 12th; that while George Hobbes was husband of the testatrix he acquired the real estate mentioned in the two wills, wholly with his own money, and gave it to his wife; that they lived together 20 years, when (in 1892) the testatrix obtained a divorce on the ground of adultery; that Hobbes married again the following year, and, after the birth of the two children mentioned, his second wife died; that during his marriage with the testatrix she was unduly jealous, and this jealously drove him to drink and to illicit intercourse with other women, but in all his quarrels he had never ill-treated her; that between the time of the divorce and his second marriage his relations with the testatrix were friendly and there was talk of a remarriage, and during the time of the second marriage these friendly relations continued, and after the death of the second wife his relations with the testatrix became very friendly and it was their intention to remarry, but this was prevented by her illness; that the testatrix was extremely fond of Hobbes' children, and had repeatedly declared to Mr. Hobbes her intention to leave the house and lot to his children, and sent for him when she learned on September 7th that she had not long to live; that the acts of Mrs. Burgess, Mrs. Patterson, Mrs. Cook, Mrs. Lewis and Mrs. Doran, between September 10th and 12th, and at the time the will was drawn, were in pursuance of a combination to influence the testatrix, and were intended to and did intimidate and influence the testa-

trix and so obtain from her the will of September 12th; that after that will was executed the testatrix was closely guarded by her mother and sister, Mr. Hobbes was not allowed to see her alone, and on September 16th she was taken by James Cook to his house and there kept closely guarded until she died.

The appellees offered evidence to prove and claimed to have proved that important portions of the appellants' testimony were untrue; that during Hobbes' marriage with the testatrix he treated her badly, lived in open adultery with other women, and at times beat her; that the house and lot mentioned in the wills was not obtained by Hobbes' money, but mainly with money of the testatrix's relatives; that while the relations of the testatrix with Hobbes after the divorce were friendly, she had no interest in him and had repeatedly declared her intention not to make a will in his favor, and had declared her intention of leaving the property to her mother; that after she became ill Hobbes began to show a great interest in her, his attentions increasing as she grew worse, and that the will of September 8th was obtained by undue influence exerted by Hobbes; that while it was true that Mrs. Cook was angry because the testatrix had made a will without remembering her, and had remained away from her for two days on account of this feeling, the other claims of the appellants were not true; that there was no combination between Mrs. Cook and the other persons named; that the making of the will of September 12th was the result of the independent and freely expressed wish of the testatrix; that at the time she made the will she was of sound mind, knew what she was doing, did it understandingly, and in making the will carried into effect her own will and intention and was free from all undue influence.

The charge of the court was given in view of this contradictory condition of evidence and claims. The judge incorporated in his charge all the requests made the appellants. He also charged in two particulars as requested by the appellees, and those requests are fully stated in the opinion.

The appellants' appeal assigns error (1) in charging in ac-

cordance with these requests of the appellees ; (2) in charging
upon the subject of undue influence as the court did charge ;
(3) because said charge, taken as a whole, was not adapted
to the issue, and was not a sufficient guide to the jury in
view of the facts claimed by the appellants to have been
proved, in that the court, by charging as requested by the ap-
pellees, so qualified its charge as given in conforming with
the appellants' request, that from these portions of the charge
taken together and from the charge taken as a whole, the
jury must have understood an erroneous direction in regard
to the legal proof of undue influence ; and (4) because the
court failed to direct the attention of the jury specifically to
the facts claimed by the appellants as proved, sufficiently to
enable the jury to apply intelligently the charge of the court
upon the subject of undue influence to such facts.

*Daniel Davenport*, for the appellants (contestants).

*John C. Chamberlain*, for the appellee (executor).

HAMERSLEY, J. The trial judge instructed the jury fully
and correctly as to what constitutes that undue influence
which renders a will invalid, and the manner in which such
influence may be established by proof. He called their atten-
tion to the application of these principles to the circumstances
of the case on trial. He stated clearly the broad contentions
of the parties, and then pointed out fairly and with sufficient
detail the evidential facts claimed by each to have been es-
tablished by the testimony. He did not attempt to repeat
the testimony in detail ; but cautioned the jury to consider
all the claims made by counsel as they were made by them,
whether included in his summary or not, and to weigh all
the evidence as it was produced before them, in connection
with those claims, and to determine the question of free agency
or external control. He then referred to the written requests
to charge filed by the parties, and complied with all the re-
quests of the appellants, and with some made by the ap-
pellees. In compliance with the request of the appellants

he charged : " Pressure of whatever character, whether act-
ing on the fears or hopes—if so exerted as to overpower voli-
tion without convincing the judgment—is a species of con-
straint under which no will can be made.   Importunity or
threats, such as the testatrix has not the courage to resist,
moral command asserted and yielded to for the sake of peace
and quiet, or of escaping from distress of mind or social dis-
comfort—these, if carried to a degree in which the free play
of the testatrix's judgment, discretion, or wish, is overborne,
will constitute undue influence, though no force was either
used or threatened.   The existence and exercise of such un-
due influence is not often susceptible of direct proof.   It is
shown by all the facts and circumstances surrounding the
testatrix, the family relations, the will, her condition of mind,
and of body as affecting her mind, her condition of health,
her dependence upon and subjection to the control of the
person influencing, and the opportunity of such person to wield
such an influence.   Such an undue influence may be inferred
as a fact from all the facts and circumstances aforesaid, and
others of like nature that are in evidence in the case, even
if there be no direct and positive proof of the existence and
exercise of such an influence."

In compliance with the request of the appellees he charged
that " the fact that one of the legatees, prior to the making
of the will in question, was angry because the testatrix had
made a former will without remembering her, and had re-
mained away from her two days on account of this feeling,
ought not to be a sufficient reason, alone, to justify the jury
in finding that said will was executed by the testatrix on
account of the undue influence of this sister exercised in that
manner."   It is this last passage that the appellants chiefly
urge as erroneous.

The statement of the court is true.   Such an exhibition of
temper might or might not influence the testatrix in favor of
her sister.   If the other evidential facts tending, in con-
nection with this, to prove a combination between the persons
surrounding the testatrix, and that by working on her fears
or otherwise they influenced her weakened mind and so

forced her to reverse a long-cherished purpose, and to execute a will which did not express her real wishes (to all which facts the court had previously directed the attention of the jury), were in truth supported by credible testimony which satisfied the jury of their existence, then the conduct of the sister might well be regarded as a controlling factor in reaching that result. On the other hand, if the fact of Mrs. Cook's anger stood alone; if there were no other testimony tending to show any external pressure upon the will of the testatrix, or, if there were other testimony and the jury gave it no credit, then the mere fact of the sister's conduct did not furnish sufficient reason to justify the jury in finding undue influence, and the court might well warn the jury against drawing an improper inference from this admitted fact.

But the appellants contend that although the statement of the judge may have been true, he should have accompanied it by the qualifying statement that the sister's conduct was admissible as tending to prove undue influence, and, in connection with the other facts the appellants claimed to have proved, might furnish conclusive evidence. The failure to do this was not error. The arrangement of his charge is largely within the discretion of the judge. He had already so instructed the jury that they could not fail to understand the importance of this evidence in connection with the other facts the appellants claimed to have proved; the danger was the jury might give this admitted fact too much importance, in case the other facts claimed had not been fairly established. In telling the jury that that fact alone would not necessarily establish undue influence, the court unavoidably reminded the jury of its evident importance in connection with the other facts to which he had just called their attention.

The appellants refer as an authority for their claim to a passage in the opinion in *Richmond's Appeal*, 59 Conn. 226, 245, quoted also in *Charter* v. *Lane*, 62 id. 121, 125. That passage, while not inappropriate in reference to the precise state of facts presented in that case, cannot be treated as establishing a rule of law. " The failure to caution the jury in respect to the weight of evidence is error *per se* in the case

of the admission of the testimony of an accomplice; but ordinarily the propriety of comment on testimony depends on the circumstances of each case. It is not true that a failure to comment on the weight of evidence of a weakened mind, etc., in connection with a statement that such facts, if proved, do not necessarily establish testamentary incapacity, must always be treated as error. The circumstances of a case may be such that a total failure to comment may seem to be equivalent to a withdrawal of the evidence and so mislead the jury to the injury of a party, as we thought in *Richmond's Appeal;* but the circumstances may be such that a slight reference to such testimony is not equivalent to its withdrawal, but is simply a proper exercise of the discretion of the judge in intimating his opinion as to the weight of evidence, as in the case at bar." *Turner's Appeal*, 72 Conn. 305, 321. In the present case the alleged failure to comment on the testimony cannot be treated as equivalent to a withdrawal of any evidence from the jury.

The appellants criticise the language of the charge as practically withholding from the jury the right to weigh this evidential fact at all, or as instructing them as a rule of law that the fact could not support a verdict for the appellants, although the jury should find that it did in fact exert an undue influence and that the will in question was the direct result of pressure thus brought to bear on the mind of the testatrix.

We do not think this criticism is just. The evident intention of the judge, which the jury would naturally not fail to apprehend, especially in view of the full instructions previously given, was to caution the jury that the fact of Mrs. Cook's conduct, admitted to be true so far as detailed in this passage of the charge, ought not to be accepted by them as, standing by itself, sufficient proof of undue influence. This the judge might properly do.

In compliance with the request of the appellees the judge also charged: "If the relations of the parties were such that a portion of the legatees were the nearest and most direct object of the testatrix's bounty, both in point of blood and affection, the fact that they were present during the making of the

will, without further proof of undue influence, ought not to justify the jury in finding such influence as a fact." The error claimed in respect to this passage of the charge is similar to the alleged error already considered, and for similar reasons is not well taken.

The view we have expressed as to the two passages in the charge specially objected to, removes any possible ground for the appellants' claim that the charge as a whole was misleading and erroneous. No instructions asked by the appellants were refused, and the instructions given were correct in law, adapted to the issue, and sufficient for the guidance of the jury in the case before them. *Hartford* v. *Champion*, 58 Conn. 268, 276.

There is no error in the judgment of the Superior Court.

In this opinion the other judges concurred.